# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

## *People v. Chapman*, 2012 IL 111896

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ROBERT J. CHAPMAN, Appellant. |
| Docket No. | 111896 |
| Filed | March 22, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a defendant's live-in girlfriend was indisputably a household or family member and his domestic violence against her led to a first degree murder charge, statute permitted his propensity to harm her to be shown by his prior domestic battery conviction involving the same victim. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Daniel J. Rozak, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Johannah B. Weber, Deputy Defender, and E. Joyce Randolph and Robert S. Burke, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Mt. Vernon, for appellant.

Lisa Madigan, Attorney General, of Springfield, and James Glasgow, State's Attorney, of Joliet (Michael A. Scodro, Solicitor General, and Michael M. Glick and Eric M. Levin, Assistant Attorneys General, of Chicago, of counsel), for the People.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion

**OPINION**

¶ 1     Following a jury trial in the circuit court of Will County, defendant Robert J. Chapman was convicted of the first degree murder of his girlfriend. Pursuant to section 115-20 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-20 (West 2006)), the State was allowed to enter into evidence that defendant had a prior conviction for domestic battery against the same victim. Defendant maintained on appeal that the language of section 115-20 of the Code does not permit the introduction of a prior domestic battery conviction in a trial for murder, even when it is undisputed that the murder victim was a household member of the accused and the same victim involved in the prior conviction. The appellate court affirmed defendant's conviction. No. 3-07-0799 (unpublished order under Supreme Court Rule 23). This court granted leave to appeal. See Ill. S. Ct. R. 315 (eff. Feb. 26, 2010), R. 612 (eff. Sept. 1, 2006). We now affirm the appellate court.

¶ 2                                    BACKGROUND
¶ 3     The State charged defendant with the first degree murder of Cassandra Frazier, alleging that defendant repeatedly stabbed her with the intent to kill. The incident that led to Frazier's death occurred in the couple's shared apartment in Joliet, Illinois, on the evening of February 22, 2005.

¶ 4     At defendant's trial, Joliet police detective Scott Cammack testified about conversations he had with defendant shortly after the murder, and the State played two audio-taped interviews between defendant and Cammack. According to this evidence, defendant told Cammack that he considered Frazier to be his wife and that they argued often. On the day of Frazier's death, defendant consumed alcohol and used crack cocaine after work before coming home around 9:45 p.m. to their apartment. Upon arriving at the apartment, Frazier

-2-

yelled at him. Defendant then took a shower and went to bed with Frazier. At that point, she yelled at him again. Defendant got out of bed, packed his clothes into a box he placed by the door, but then returned to bed naked.

¶ 5 According to defendant, Frazier stabbed him in the leg after he got back into bed. Defendant then grabbed the knife from Frazier, cutting his hand in the process. He told Frazier, "you want to stab a nigger, I will let you see how it feels." Defendant then began stabbing Frazier while they were still in bed. The two eventually fell onto the floor. Defendant straddled over Frazier while she was on the floor and continued to stab her in her upper body and neck. At some point during the attack, Frazier told defendant that she loved him. At this, defendant stopped stabbing Frazier, but left the knife sticking into her neck.

¶ 6 Defendant stated that after the attack, he left the bedroom and put on his clothes and boots. He returned to the bedroom briefly, leaving a boot track in the blood. While in the bedroom, defendant noticed Frazier remove the knife from her neck. Defendant then went to the kitchen table where he searched through Frazier's purse for money so he could pay for a taxi to get out of the area.

¶ 7 In the meantime, Frazier was badly bleeding after having removed the knife from her neck. She managed to crawl out of the bedroom and into the living room, where she was able to get on her feet. When Frazier got to the front door with her hand on the doorknob, defendant threw her back to the floor. Defendant explained to detective Cammack that he wanted to prevent Frazier from leaving the apartment because he feared she would go for help and a neighbor would become involved. Defendant estimated that he was in the apartment for about three or four minutes from the time the stabbing ended to the time he left. Defendant described the injury to his leg as having "just been grazed."

¶ 8 Karen Bergin testified that around 10:30 p.m. on the day in question she was driving west on Jefferson Street in Joliet when she spotted defendant running in the right lane of that four-lane street. He had his arms up and seemed upset. As she came to a stop and defendant approached her car, she noticed that his shirt had blood on it, and he had a minor cut on the palm side of his left middle finger. Bergin gave him a napkin, which seemed to control the bleeding. Defendant told Bergin to call 911, and she did. While they waited for an ambulance, defendant told Bergin that he "did something real bad," he "sold drugs" and they "had a fight about the drugs." Defendant also said that "she had a knife" and he "took it from her." But defendant did not tell Bergin what he did with the knife.

¶ 9 Detective Cammack testified that when he arrived at the scene on Jefferson Street, defendant was just entering the ambulance. Cammack noticed the cut on defendant's finger and a small cut on his right leg. Cammack accompanied defendant to the hospital, where defendant received eight stitches for the cut to his finger and four stitches for the cut to his leg. Defendant was released that night and taken to the police station.

¶ 10 Dr. Brian Mitchell, a board certified forensic pathologist, testified that he performed an autopsy on Frazier. He noted that she suffered 18 "sharp force injuries," including both stab wounds and incise wounds, to the upper half of her body. The cause of death was a two-inch stab wound to the right side of Frazier's neck that struck her carotid artery and jugular vein. Mitchell believed that if Frazier could have received prompt first-aid treatment and then

surgery, she may have been able to survive.

¶ 11        Prior to trial, the State moved to admit evidence of a prior domestic battery conviction that defendant committed against Frazier in October 2003. The State also moved to admit evidence that defendant set fire to Frazier's apartment in November 2004. In support of its motion, the State argued that the domestic battery conviction was admissible, not just for the limited purpose of proving defendant's intent and rebutting claims of provocation and self-defense, but also as propensity evidence under section 115-20 of the Code. The trial court held that the State could introduce defendant's prior domestic battery under the statute as propensity evidence at a subsequent prosecution of defendant for the murder of the same victim. Although murder was not one of the offenses specifically mentioned in section 115-20 that allowed admission of the conviction, the statute contained expansive language that allowed the admission of the prior domestic battery in a later prosecution for any of the "types of offenses" listed in the statute. See 725 ILCS 5/115-20(a) (West 2006). The court noted that aggravated battery of a household member—one of the specific crimes listed in the statute—was similar to murder of a household member because an aggravated battery of a household member could easily turn out to be first degree murder if it results in the death of the victim. The court later noted that it had weighed the probative value of the evidence against its prejudicial effect before deciding to allow its admission.

¶ 12        The court further held that it would permit testimony of defendant's prior act of setting fire to Frazier's apartment under cases such as *People v. McCarthy*, 132 Ill. 2d 331 (1989), to show defendant's intent to harm the victim. See also *People v. Heard*, 187 Ill. 2d 36 (1999); *People v. Illgen*, 145 Ill. 2d 353 (1991); *People v. Abraham*, 324 Ill. App. 3d 26 (2001). In *McCarthy*, the defendant responded to the charge that he murdered his former girlfriend by claiming he shot her in a jealous rage after finding her in bed with another man. This court found that the defendant's prior acts of domestic violence toward his former girlfriend and members of her family were admissible to show the defendant's intent to harm the victim and to show that he did not commit the homicide while acting under a sudden passion. *McCarthy*, 132 Ill. 2d at 344.

¶ 13        In accordance with the court's pretrial evidentiary rulings in the present case, Herman Ware testified about a November 2004 fire that was set in Frazier's apartment. Before Ware testified, however, the court informed the jury that Ware's testimony would involve conduct other than what was charged in the indictment and that the jury should only consider his testimony for the limited purpose of evaluating the issue of defendant's intent.[1] Ware then testified that he was the pastor of the church that defendant and Frazier once attended. Ware recounted a conversation he had with defendant in the fall of 2004 where defendant told Ware that he was concerned that Frazier might break up with him and that "he would rather see her dead before he would see her with anybody else." Shortly after that conversation, on November 2, 2004, Ware learned that Frazier's apartment had been set on fire. After the fire,

---

[1]The trial court reinforced this instruction before the jury began its deliberations, admonishing that "[a]ny evidence that was received for a limited purpose should not be considered *** for any other purpose."

Ware walked through the apartment and saw that the fire appeared to have been started in the bedroom. Later, Ware confronted defendant about it, and defendant admitted that he broke into Frazier's home to set the fire. Defendant told Ware that he started the fire because he was angry at Frazier because he felt that her children and the church were more important to her than her relationship with defendant. Defendant also said that he set the fire because "he wanted her to see how it felt to not have anything."

¶ 14    The State concluded its evidence by informing the jury that defendant had been convicted of domestic battery against Frazier on October 31, 2003. Defendant did not testify, nor did he present any evidence. In his closing argument, defense counsel conceded that defendant killed Frazier and that it was not a case of self-defense. He argued, however, that when defendant attacked Frazier, he was acting under a sudden and intense passion as a result of serious provocation because Frazier stabbed him first.

¶ 15    The trial court instructed the jury on both first and second degree murder. Over defendant's objection, the court also instructed the jury that the fact that defendant had been convicted of a domestic battery against Frazier could be considered "for its bearing on any matter to which it was relevant."

¶ 16    The jury found defendant guilty of first degree murder. At the sentencing hearing, the trial court catalogued defendant's extensive and violent criminal history and noted that he was eligible for an extended-term sentence of 20 to 100 years. The court sentenced defendant to 60 years in prison. It also denied defendant's posttrial motion.

¶ 17    On appeal, defendant argued, among other things, that the State should not have been allowed to introduce evidence of his prior domestic battery conviction as propensity evidence under section 115-20 of the Code. The appellate court concluded, however, that the statute was unambiguous and the trial court did not err when it found that the instant murder was one of the "types of offenses" that allowed application of the statute. No. 3-07-0799 (unpublished order under Supreme Court Rule 23).

¶ 18                                ANALYSIS

¶ 19    It is well settled under the common law that evidence of other crimes is admissible if relevant for any purpose other than to show a defendant's propensity to commit crimes. *People v. Wilson*, 214 Ill. 2d 127, 135-36 (2005). Those purposes include—but are not limited to—motive, intent, identity, lack of mistake and *modus operandi*. *People v. Dabbs*, 239 Ill. 2d 277, 283 (2010) (collecting cases). Even when such evidence is offered for a permissible purpose and not solely for propensity, such evidence will not be admitted if its prejudicial impact substantially outweighs its probative value. *People v. Moss*, 205 Ill. 2d 139, 156 (2001). It is within the sound discretion of the trial court to determine the admissibility of other-crimes evidence, and its decision will not be disturbed absent a clear abuse of discretion. *Wilson*, 214 Ill. 2d at 136.

¶ 20    Section 115-20 of the Code, at issue in this case, partly abrogates the common law rules noted above by allowing evidence of a prior conviction for certain types of offenses to be considered for its bearing on any matter to which it is relevant, including propensity. Section 115-20 provides as follows:

"(a) Evidence of a prior conviction of a defendant for domestic battery, aggravated battery committed against a family or household member as defined in Section 112A-3,[2] stalking, aggravated stalking, or violation of an order of protection is admissible in a later criminal prosecution *for any of these types of offenses* when the victim is the same person who was the victim of the previous offense that resulted in conviction of the defendant.

(b) If the defendant is accused of an offense set forth in subsection (a) or the defendant is tried or retried for any of the offenses set forth in subsection (a), evidence of the defendant's conviction for another offense or offenses set forth in subsection (a) may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant if the victim is the same person who was the victim of the previous offense that resulted in conviction of the defendant.

(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances.

(d) In a criminal case in which the prosecution intends to offer evidence under this Section, it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial, or during trial if the court excuses pretrial notice on good cause shown.

(e) In a criminal case in which evidence is offered under this Section, proof may be made by specific instances of conduct as evidenced by proof of conviction, testimony as to reputation, or testimony in the form of an expert opinion, except that the prosecution may offer reputation testimony only after the opposing party has offered that testimony." (Emphasis added.) 725 ILCS 5/115-20 (West 2006).

This court has held that statutes like the one quoted above abrogate the common law rule against propensity evidence as long as the evidence is relevant and its probative value is not substantially outweighed by the risk of undue prejudice. See *Dabbs*, 239 Ill. 2d at 284; see also *People v. Ward*, 2011 IL 108690, ¶ 25 (in considering section 115-7.3 of the Code (725 ILCS 5/115-7.3 (West 2006)), a statute analytically similar to section 115-20, the court observed that propensity evidence is often highly relevant and the statute provides a legislative exception to the general common law rule against admitting other crimes evidence intended to show the defendant's propensity to commit crimes).

¶ 21     Relying on subsection (b) of section 115-20, defendant argues before this court that only when a defendant is accused of, or on trial for, one of the specific offenses actually

---

[2]Section 112A-3(3) of the Code defines "[f]amily or household members," *inter alia*, as "persons who share or formerly shared a common dwelling" or who have had or have a dating relationship. 725 ILCS 5/112A-3(3) (West 2006).

enumerated in subsection (a)—that is, domestic battery, aggravated battery committed against a household member, stalking, aggravated stalking, or violation of an order of protection—is propensity evidence of a prior conviction for one of those offenses allowable in evidence. Murder is not any of those offenses, and defendant therefore asserts that a prior conviction for domestic battery is not admissible in a murder prosecution.

¶ 22    The State in response submits that defendant's interpretation of section 115-20 is contrary to the plain meaning and legislative intent because it effectively eliminates from subsection (a) the phrase "types of offenses." In the alternative, the State argues that any error in the admission of the prior domestic battery conviction for propensity purposes was harmless given that the conviction would have been admissible in any event to show defendant's intent to harm Frazier under *McCarthy*, 132 Ill. 2d at 344, and the numerous cases that have followed it. Finally, the State maintains even if the prior conviction was not admissible under section 115-20 of the Code, it would still be admissible to show propensity under section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2008)), a statute enacted after defendant's trial. According to the State, because the same result of admitting the evidence for propensity purposes would be obtained on remand for a new trial if section 115-7.4 is considered, any error was harmless, and this court should simply affirm the conviction.

¶ 23    Defendant's argument raises a question of statutory construction, requiring employment of the following well-settled principles. The interpretation of a statute presents a question of law that this court reviews *de novo*. *People v. Howard*, 228 Ill. 2d 428, 432 (2008). Our primary objective in construing a statute is to ascertain and give effect to the legislative intent, and the surest and most reliable indicator of that intent is the plain and ordinary meaning of the statutory language itself. *Dabbs*, 239 Ill. 2d at 287. Where the language is clear and unambiguous, this court will apply the statute without further aids of statutory construction. *People v. Davison*, 233 Ill. 2d 30, 40 (2009). In determining the plain meaning of the statutory terms, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in passing it. *People v. Davis*, 199 Ill. 2d 130, 135 (2002).

¶ 24    The opening sentence of section 115-20 is the key to the resolution of the issue before us, and it provides that the enumerated prior convictions are "admissible in a later criminal prosecution for *any of these types of offenses* when the victim is the same person who was the victim of the previous offense that resulted in conviction of the defendant." (Emphasis added.) 725 ILCS 5/115-20(a) (West 2006). The Code does not define the word "types." When a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term. *Dabbs*, 239 Ill. 2d at 288; *Davison*, 233 Ill. 2d at 40.

¶ 25    A standard dictionary defines the word "type" (as it is used in the statute) as follows: "1. a kind, class, or group that is distinguished by some particular characteristic. 2. the general form, structure, style or character common to or distinctive of a particular kind, class, or group. 3. a person or thing embodying the characteristic qualities of a kind, class or group; a representative specimen." The Random House Dictionary of the English Language 1531 (1983). Another dictionary provides a similar definition of "type" as a "group, kind, or class sharing common traits or characteristics: category" and as "[a]n example: model." Webster's

II New Riverside Dictionary 741 (1984). From these ordinary dictionary definitions, we can only conclude that the "types of offenses" section 115-20(a) speaks of are broader than those specifically designated; in other words, they include the enumerated offenses, but also other offenses of their "kind, class or group" that share a particular characteristic or quality. Thus, we reject defendant's suggestion that the legislature intended that a prior domestic battery conviction could only be admissible in a prosecution for one of the specifically enumerated offenses.

¶ 26       We believe that defendant's contention that application of section 115-20 is restricted to prosecutions involving the exact same crimes listed in the statute is contrary to its plain and ordinary meaning and the apparent legislative intent in enacting it of limiting repeat acts of domestic violence. The statute, read as a whole, does not limit the admissibility of a defendant's prior convictions for the enumerated offenses to subsequent prosecutions for those same offenses. Defendant's interpretation would result in a rewrite of subsection (a) to effectively read that a defendant's prior conviction for any of the five enumerated offenses is admissible in a later criminal prosecution for any of *these offenses* when the victim is the same person who was the victim of the previous offense that resulted in conviction of the defendant. Defendant's interpretation, contrary as it is to the plain language, would also render the statutory phrase "types of offenses" meaningless or superfluous (see *People v. Marshall*, 242 Ill. 2d 285, 292 (2011) (statute should be construed to avoid rendering any part of it meaningless or superfluous)), by restricting the admission of one of the listed prior convictions to a later prosecution for one of those same offenses.

¶ 27       It is true that subsection (b) itself does not use the phrase "these types of offenses" when it refers to a defendant "accused of an offense set forth in subsection (a)" to describe the proceeding in which the prior conviction is admissible. But because subsections (a) and (b) are interrelated provisions of the same statute, subsection (b)'s reference to the "offense[s] set forth in subsection (a)" should be read as incorporating subsection (a)'s reference to "any of these types of offenses." See *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 410-11 (2009) (courts must view all provisions of a statutory enactment as a whole, construing words and phrases not in isolation, but in light of other relevant provisions); *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 218 (2008) (two or more provisions relating to the same subject are presumed operative and harmonious and should be construed with reference to each other to give effect to all the provisions if possible).

¶ 28       We further conclude that defendant's murder prosecution in the instant case was indeed for one of the "types of offenses" to which section 115-20(a) refers. The murder of a household member, depending on the circumstances, can clearly be considered of the same "kind, class or group" as those enumerated in the statute, which, as the legislative debates quoted in defendant's own brief establish, was enacted to curb the recurring problem of domestic violence involving the same victim. See 90th Ill. Gen. Assem., House Proceedings, Apr. 19, 1997, at 26-30.

¶ 29       Here, defendant was charged with the first degree murder of Frazier, who was indisputably defendant's girlfriend with whom he shared an apartment as a household member. Moreover, the whole incident leading up to Frazier's death involved an occasion

of domestic violence. According to defendant's taped statements and other undisputed evidence, defendant and Frazier argued after he came home from a day of drinking alcohol and using cocaine. Frazier allegedly initiated the violence by stabbing him in the leg as he lay in bed. Defendant then wrestled the knife away from Frazier and proceeded to stab and slice her 18 times. Then, after the passage of several minutes and Frazier slowly bleeding to death, defendant prevented her from getting lifesaving aid by throwing her from the door back to the floor of the apartment. Both the trial and appellate courts correctly recognized that the murder of a family or household member, which involves an incident of domestic violence, is the functional equivalent of a domestic battery or an aggravated battery committed against that family or household member, albeit with a more tragic result.

¶ 30    Defendant points out that "[t]here is no crime designated 'aggravated battery involving a family or household member' " in the Code. But this fact actually supports the State's position that murder of a household member can, in the appropriate case, fit under the statutory language "any of these types of offenses" because, if aggravated battery involving a household or family member is not an actual offense, then it follows that the legislature must have intended that the trial court have leeway to look to the facts and circumstances surrounding the incident to determine whether the prosecution at issue is for the type of offense contemplated by the statute.

¶ 31    It is also not surprising that the murder of a household or family member is not specifically enumerated in the statute given that the enumerated offenses are the prior convictions that may be admitted in the *subsequent* and more broadly defined prosecution. Obviously, it would be highly unlikely, if not impossible, that a prior murder conviction would be sought to be used in a subsequent case against the already convicted murderer for another crime the murderer committed against the same victim. But the converse is quite likely. Thus, the General Assembly's choice in language not to specifically list murder as one of the prior convictions, but on the other hand to broaden the category of prosecutions where the prior conviction is admissible to include offenses of the same type as those listed, which would include murder in a domestic violence setting, makes perfect sense.

¶ 32    Defendant makes no specific argument before this court to challenge the lower courts' conclusions that the probative value of the domestic battery conviction outweighed any undue prejudice other than to argue that propensity evidence should always be excluded. In that regard, defendant implied in his opening brief that section 115-20 of the Code, the authority for allowing his prior conviction for propensity purposes, violated due process principles. However, in his reply brief, defendant conceded that he is not attacking the constitutionality of section 115-20. We note that such an argument would have been foreclosed in any event by *People v. Dabbs*, 239 Ill. 2d 277, 293-94 (2010). There, this court held that the propensity rule is of common law origin and not of constitutional dimension. *Id.* at 293. This court further held that section 115-7.4 of the Code (725 ILCS 5/115-7.4 (West 2008)), a statute nearly identical to the one before us here in allowing propensity evidence, did not violate due process. *Id.* at 293-94.

¶ 33    We also conclude that defendant's prior domestic battery conviction, an act of hostility toward Frazier committed less than a year and a half prior to the murder, was relevant to show defendant's intent and inclination to harm Frazier during the course of the instant

crime. As such, the evidence supported the State's theories that defendant had a proclivity to harm Frazier and that defendant did not commit the murder as a result of self-defense or due to a fit of passion. Accordingly, we conclude that the trial court did not abuse its discretion in determining that defendant's domestic battery conviction against Frazier was more probative than unduly prejudicial. The trial court therefore did not err in admitting the conviction.

¶ 34 As an additional matter, we note that defendant makes no effort before this court to challenge the lower courts' rulings allowing Ware's testimony of defendant's prior act of setting fire to Frazier's apartment. We must therefore conclude that defendant has abandoned any argument on that point. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("[p]oints not argued are waived"); *Dabbs*, 239 Ill. 2d at 294 (the defendant abandoned any challenge to a statute by failing to raise the claim before this court).

¶ 35 Finally, we note that our resolution of the foregoing issues renders it unnecessary to reach the additional arguments made by the State in support of the appellate court's judgment affirming defendant's conviction.

¶ 36            CONCLUSION

¶ 37 For the foregoing reasons, we hold that section 115-20 of the Code allows the admission of a prior domestic battery conviction to be used to show propensity to harm the same victim in a subsequent murder trial when the trial court properly determines that the alleged murder victim was a household or family member of the accused and that the incident charged was the result of domestic violence. Accordingly, we affirm the judgment of the appellate court.

¶ 38 Affirmed.