# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Mendez*, 2013 IL App (4th) 110107

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE MENDEZ, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0107 |
| Filed | March 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for the first degree murder of his girlfriend's son was upheld over his contentions that he was guilty of involuntary manslaughter, not first degree murder, that other-crimes evidence was improperly admitted and that mitigating factors were not properly considered in imposing the 55-year sentence. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 07-CF-416; the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Karen Munoz, and Arden J. Lang, all of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Patrick Delfino, Robert J. Biderman, and Amy Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Steigmann and Justice Pope concurred in the judgment and opinion.

## OPINION

¶ 1    A jury found defendant, Joe Mendez, guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)) and the trial court sentenced him to 55 years in prison. Defendant appeals, arguing (1) the evidence was sufficient to prove him guilty of involuntary manslaughter rather than first degree murder, (2) the court erred in admitting other-crimes evidence and instructing the jury regarding how to consider such evidence, and (3) the court abused its discretion in sentencing him by failing to give adequate weight to mitigating factors. We affirm.

¶ 2                    I. BACKGROUND

¶ 3    On May 2, 2007, the grand jury indicted defendant on three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2006)) and one count of aggravated battery to a child (720 ILCS 5/12-4.3(a) (West 2006)) in connection with the death of three-year-old Logan Bratton. At trial, the State presented the testimony of several individuals, including firefighters and emergency medical personnel, police officers, Logan's medical providers, and family members. Defendant testified on his own behalf and also presented the testimony of his younger brother and the mother of his biological children. Additionally, both parties presented testimony of medical experts in the area of forensic pathology.

¶ 4    Evidence showed defendant resided in an apartment with his girlfriend, Donetta Ernst, and Logan, Donetta's son. Defendant had four biological children who, at times, would also stay in the home. On April 4, 2007, defendant was at home with Logan, three of his own children, and his teenaged brother while Donetta was at work. On that date, firefighters and emergency medical personnel were dispatched to the home in response to a report that a child had fallen. Upon their arrival, they found defendant holding Logan. Logan was unresponsive with inadequate breathing. He was taken to the emergency room at BroMenn Hospital in

Normal, Illinois, and then airlifted to St. Francis Medical Center in Peoria, Illinois, where, ultimately, he was pronounced dead.

¶ 5    The State's evidence showed defendant initially reported Logan was injured after falling from a bunk bed in the home. However, almost two weeks after the incident on April 16, 2007, he admitted he hit Logan one time. Defendant testified, on the day of the incident, his daughter Alicia and Logan were fighting over a toy. Defendant intervened and spanked Alicia. Logan tried to run, but defendant reached out and hit Logan in the head with the back of his hand. Defendant testified Logan "just fell on the floor." He stated Logan struggled like he was trying to get up but could not stand on his own. Defendant called 9-1-1. He acknowledged he initially lied to police and Donetta about how Logan was injured but stated he was scared and did not know what to say.

¶ 6    As stated, both parties presented the testimony of medical experts who reviewed Logan's medical records, the autopsy report, and autopsy photographs. Each gave contradictory opinions regarding the extent and cause of Logan's injuries and his cause of death. Dr. John Denton testified for the State. He identified multiple external and internal injuries to Logan's body, many of which he found to have been recently sustained. Dr. Denton opined Logan's cause of death was "brain injuries due to blunt head trauma." He also would have diagnosed child abuse due to a "repetitive process going on." He testified Logan had severe brain bleeding and swelling and found those injuries were inconsistent with being backhanded one time or with a single blow to the head. Dr. Denton described Logan's injuries "as inflicted and non-accidental" and believed Logan sustained "multiple blunt impacts to the head."

¶ 7    Dr. Shaku Teas testified on defendant's behalf. Regarding cause of death, Dr. Teas found "Logan had a multitude of things going on." She determined he had an older abdominal injury which may not have been fatal by itself. Dr. Teas stated Logan had developed pneumonia and had a "bilateral adrenal gland hemorrhage" which indicated "he had septicemia." Thereafter, Logan had massive brain swelling with a subarachnoid hemorrhage. Dr. Teas felt his death "was a combination of everything that was going on" and agreed that "trauma may have played a role in the head injury that may have occurred on the day [Logan] was taken to the hospital." She testified that "if Logan developed a septicemia and infection, any kind of minor trauma may have triggered massive edema of the brain." Dr. Teas defined edema as swelling and also found evidence that he may have had an infection. Dr. Teas testified she did not "find any significant blunt force trauma to [Logan's] head externally anywhere."

¶ 8    Additionally, over defendant's objection, the State presented testimony from family members concerning defendant's past conduct toward Logan. Donetta testified she was in a relationship with defendant for approximately one year. During that time frame, she had the opportunity to observe defendant's interactions with his own children and his interactions with Logan. She stated there were some days she "felt that Logan was kind of pushed aside." Donetta described a trip she took in December 2006, with defendant, Logan, and two of defendant's children. The family went to visit Donetta's aunt, Cindy Rister, at her home in Arkansas. Both Donetta and Rister described an occasion when defendant became upset or angry after Rister bought Logan a new outfit but nothing for defendant's own two children.

¶ 9    Donetta and Rister also testified regarding an incident at a McDonald's restaurant immediately before Donetta, defendant, and the children were to return to Illinois. On that occasion, each recalled defendant suggesting that Donetta leave Logan in Arkansas with Rister. On cross-examination, Donetta acknowledged that, on two occasions after Logan's death, police questioned her about defendant's statements during the Arkansas trip and she denied hearing defendant say he wanted to leave Logan in Arkansas.

¶ 10   Rister provided testimony regarding two additional incidents. First, she described an incident when defendant made Logan remain at the dinner table to finish his food but allowed his own two children to leave the table. Second, she observed defendant discipline Logan in response to statements defendant's children made even though Rister had not observed Logan do anything wrong.

¶ 11   Angela Ernst, Donetta's mother and Logan's grandmother, described an incident on March 31, 2007, several days before Logan's death. On that occasion, she picked Logan up from Donetta and defendant's residence where he had been in defendant's care to take him to a relative's birthday party. Ernst testified Logan told her he had a bellyache and that defendant was "being nice to [him]."

¶ 12   On May 19, 2010, the jury returned its verdict, finding defendant guilty of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)). On June 15, 2010, defendant filed a motion for judgment notwithstanding the verdict or for a new trial. On September 23, 2010, the trial court denied defendant's motion and sentenced him to 55 years in prison. On October 21, 2010, defendant filed a motion to reconsider his sentence, arguing it was excessive and the court failed to give proper weight to mitigating factors. On January 7, 2011, the court denied defendant's motion.

¶ 13   This appeal followed.


¶ 14                                   II. ANALYSIS

¶ 15   On appeal, defendant first argues the State's evidence was insufficient to prove him guilty of first degree murder. Instead, he maintains the evidence established only that he acted recklessly and was guilty of the lesser offense of involuntary manslaughter.

¶ 16   Where a defendant challenges the sufficiency of the evidence against him, "a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224, 920 N.E.2d 233, 240 (2009). "When considering a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant." *Siguenza-Brito*, 235 Ill. 2d at 228, 920 N.E.2d at 242. "[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses." *Siguenza-Brito*, 235 Ill. 2d at 224-25, 920 N.E.2d at 240.

¶ 17   On review, a defendant's conviction will not be reversed simply because there is contradictory evidence or because the defendant claims a witness was not credible. *Siguenza-Brito*, 235 Ill. 2d at 228, 920 N.E.2d at 243. Instead, a criminal conviction will be set aside only when "the evidence is so improbable or unsatisfactory as to create a reasonable doubt

of the defendant's guilt." *Siguenza-Brito*, 235 Ill. 2d at 225, 920 N.E.2d at 240-41.

¶ 18    Here, defendant was charged with multiple counts of first degree murder. As charged in this case, "[a] person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death: (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death *** or (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another." 720 ILCS 5/9-1(a)(1), (a)(2) (West 2006).

¶ 19    At trial, defendant's jury was also instructed regarding the offense of involuntary manslaughter. "Involuntary manslaughter requires a less culpable mental state than first degree murder and is therefore a lesser-included offense of first degree murder." *People v. Robinson*, 232 Ill. 2d 98, 105, 902 N.E.2d 622, 626 (2008). A person commits involuntary manslaughter where he "recklessly" performed acts that were "likely to cause death or great bodily harm" and, as a result of those acts, he "unintentionally kills an individual without lawful justification." 720 ILCS 5/9-3(a) (West 2006). A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." 720 ILCS 5/4-6 (West 2006).

¶ 20    Defendant argues evidence at trial showed "a disregard of a substantial risk" rather than that he intended to cause death or great bodily harm to Logan or that he knew his acts created a strong probability of death or great bodily harm. To support his position, defendant points to his own testimony that he only hit Logan one time and contradictory medical evidence regarding the condition of Logan's body and the cause of his death. Also, defendant argues the evidence showed he sought help immediately after Logan collapsed by dialing 9-1-1 and calling out to his brother who began cardiopulmonary resuscitation (CPR). He argues those " 'subsequent actions' offered powerful insight into the unintended nature of the cause of death." As further support for his position, he argues evidence showed he was involved in Logan's daily life as a caretaker, exhibited kindness toward Logan, and expressed remorse following Logan's death.

¶ 21    On appeal, defendant's position amounts to a request that this court ignore the jury's findings and reweigh the evidence in his favor. However, as stated, it is not the function of this court to retry the defendant and, instead, we must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the charged offense. Despite the presentation of conflicting medical opinions and other evidence, the State presented sufficient evidence from which the jury could have found defendant guilty of first degree murder.

¶ 22    At trial, evidence showed Logan was injured and died after being in defendant's care. Immediately following the incident and for nearly two weeks thereafter, defendant repeatedly lied about the circumstances surrounding Logan's death and gave false information to Logan's medical providers, Donetta, and the police. Although he ultimately acknowledged hitting Logan in the head one time, the State presented medical evidence showing Logan

sustained multiple injuries to his head and indicating multiple blunt force impacts.

¶ 23    When Logan was initially taken to the hospital, testing revealed swelling in his brain with some bleeding in his head. The impression of the emergency room physician was that Logan suffered a significant brain edema secondary to probable head injury. Dr. Girish Deshpande, a specialist in pediatric critical care, diagnosed Logan as "brain dead of severe hypoxic ischemia brain damage." He testified Logan's injuries were inconsistent with someone who had been hit one time. The autopsy report showed Logan's cause of death as "complications of blunt head trauma." Dr. Denton, the State's expert, agreed with the autopsy findings but termed Logan's cause of death as "brain injuries due to blunt head trauma." Also, based on the older injuries he noted, Dr. Denton would have diagnosed child abuse due to a "repetitive process going on."

¶ 24    Dr. Denton noted several external and internal injuries to Logan's body, including (1) bruises to his forehead, right cheek, right and left side of the back of his head, and left and right buttock; (2) separation of the growth plates of the skull due to brain swelling from injury along with subdural and subarachnoid brain hemorrhaging; (3) bleeding in the diaphragm muscle; (4) a laceration and bleeding in the caudate lobe of Logan's liver; (5) a scar on the back side of the right lobe of Logan's liver; (6) bleeding around Logan's kidneys; (7) bleeding within the adrenal glands; and (8) severe bleeding in the large intestine. He testified bruises to Logan's forehead, cheek, the right side of his head, left buttock, and one of the bruises to his right buttock were blue, violet-purple, or red in color, indicating they were recently sustained. Dr. Denton stated the bleeding in Logan's brain was caused by blunt trauma and noted thicker bleeding on the right side of Logan's head, indicating that area sustained the greatest force or blunt trauma. He testified Logan's internal injuries were consistent with blunt trauma. Further, Dr. Denton opined the bleeding in Logan's diaphragm muscle was a recent injury and his kidney injury had features of being both older and newer, possibly indicating a newer injury on top of an older injury.

¶ 25    Dr. Denton opined Logan's injuries of severe brain bleeding and swelling were inconsistent with being backhanded one time or with a single blow to the head. He stated a single backhand could explain the bruise to Logan's right cheek but not the other bruises on the left side of his head, back of his head, or forehead. Additionally, Dr. Denton described Logan's injuries "as inflicted and non-accidental." He noted the number of injuries to Logan's head, including the forehead, above the right ear, the right side of the head, and two on the left side of the head, and described them as being caused by "multiple blunt impacts to the head."

¶ 26    While defendant accurately points out that he submitted contradictory evidence, the jury had the opportunity to hear all of the evidence presented. It also viewed various autopsy photographs and videos of defendant talking with police. There was sufficient evidence from which the jury could determine Logan sustained multiple injuries and blunt impacts to the head inflicted by defendant, and find that defendant acted with either intent to cause death or great bodily injury or with knowledge that his acts created a strong probability of death or great bodily harm to three-year-old Logan.

¶ 27    On appeal, defendant next argues the trial court erred in admitting other-crimes evidence.

He contends the evidence was irrelevant to the issues in the case or, if relevant, the prejudicial effect of the evidence outweighed its probative value. Specifically, defendant challenges the State's presentation of other-crimes evidence through the testimony of Donetta, Rister, and Ernst, regarding defendant's comments and actions toward Logan during the Arkansas trip and Logan's statement to Ernst several days before his death that defendant was "being nice to [him]."

¶ 28 " 'Evidence is "relevant" if it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.' " *People v. McSwain*, 2012 IL App (4th) 100619, ¶ 36, 964 N.E.2d 1174 (quoting *People v. Roberson*, 401 Ill. App. 3d 758, 771-72, 927 N.E.2d 1277, 1289 (2010)). Generally, "evidence of other crimes is admissible if relevant for any purpose other than to show a defendant's propensity to commit crimes." *People v. Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119. Other-crimes evidence may include both criminal acts and acts which may not constitute a criminal offense. *McSwain*, 2012 IL App (4th) 100619, ¶ 35, 964 N.E.2d 1174. Permissible purposes for other-crimes evidence include motive, intent, identity, lack of mistake, and *modus operandi*. *Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119.

¶ 29 However, even where other-crimes evidence is offered for a permissible purpose, it "will not be admitted if its prejudicial impact substantially outweighs its probative value." *Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119. Whether to admit such evidence is within the trial court's sound discretion and, on review, "its decision will not be disturbed absent a clear abuse of discretion." *Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119.

¶ 30 During defendant's trial, the State made an offer of proof regarding the testimony it sought to present from Donetta, Rister, and Ernst. The State argued the evidence went to defendant's state of mind, motive, and lack of mistake, and was relevant to its theory that defendant favored his own children over Logan. Defendant objected to the evidence, arguing it was irrelevant and prejudicial. The record reflects the State presented more evidence in its offer of proof than what was ultimately admitted at trial due to the trial court's determination that several portions of the witnesses' testimony were irrelevant and inadmissible. In ruling on the proffered evidence, the court expressly stated it considered the relevancy of the evidence and its probative value versus its prejudicial effect. It determined the testimony about the Arkansas trip and Logan's statement to Ernst were admissible, finding the evidence relevant to the State's theory of a pattern of animosity directed toward Logan and showing motive, state of mind, or lack of mistake. The court also found the probative value of the evidence outweighed its prejudicial effect.

¶ 31 Here, the record shows the trial court fully considered the State's proffered evidence and defendant's objections. Its analysis in reaching its decision was appropriate and it found much of the State's proffered evidence inadmissible. We find no error in the court's admission of the evidence as it was relevant for the purpose of showing defendant's motive, in that he favored his own children and exhibited animosity toward Logan. Defendant argues there was no link between the proffered testimony and the motive for murder. However, the evidence at trial showed defendant was intervening in an incident between one of his children and Logan at the time Logan was injured. The court did not abuse its discretion.

¶ 32 Defendant also argues the trial court improperly instructed the jury as to how to consider the other-crimes evidence. Specifically, he complains that the court could have given, but failed to give, oral limiting instructions to the jury.

¶ 33 Initially, we note defendant failed to raise this issue either at trial or in his posttrial motion. As a result, the issue of the trial court's failure to give limiting oral instructions has been forfeited. See *People v. Patrick*, 233 Ill. 2d 62, 76, 908 N.E.2d 1, 9 (2009) (A defendant forfeits a jury instruction claim of error by failing to raise the issue with the trial court.). However, defendant's claim is also without merit. The record reflects the court instructed the jury in writing at the close of the trial with the proper instruction. See Illinois Pattern Jury Instruction, Criminal, No. 3.14 (4th ed. 2000). Further, while contemporaneous oral instructions are advisable, the failure to instruct the jury at the time the other-crimes evidence is admitted " 'does not mandate reversal.' " *People v. Butler*, 377 Ill. App. 3d 1050, 1067, 882 N.E.2d 636, 649 (2007) (quoting *People v. Heard*, 187 Ill. 2d 36, 61, 718 N.E.2d 58, 72 (1999)). We reiterate that defendant did not ask for contemporaneous oral instructions.

¶ 34 Defendant further points out that, during the jury instruction conference, he objected to the lack-of-mistake exception being included in the written jury instructions on the basis that he admitted disciplining Logan and really had not "argued any sort of mistake." The State responded that defendant's "mistake" could be that defendant "hit [Logan] harder than what he meant to." The trial court noted defendant's objection but included lack of mistake within its written instruction, finding the State had shown enough relevance to include the exception.

¶ 35 Assuming the trial court included improper exceptions within its instruction, we find no error. This court has previously noted that " '[w]hen jurors receive a limiting instruction that permits them to consider evidence for a number of reasons, and one of those reasons is determined on appeal to be improper, judgment of conviction must be affirmed despite the overly broad instruction.' " *People v. Spyres*, 359 Ill. App. 3d 1108, 1115, 835 N.E.2d 974, 979-80 (2005) (quoting *People v. Jones*, 156 Ill. 2d 225, 240, 620 N.E.2d 325, 330 (1993)). As a result, even when other-crimes evidence is not admissible pursuant to certain exceptions, the inclusion in a jury instruction of the proper exception warrants affirming the defendant's conviction. *Spyres*, 359 Ill. App. 3d at 1115, 835 N.E.2d at 980; see also *People v. Carter*, 362 Ill. App. 3d 1180, 1192-93, 841 N.E.2d 1052, 1062 (2005). Here, the trial court's instruction included the proper exception and reversal is unwarranted.

¶ 36 Finally, on appeal defendant argues the trial court erred in sentencing him to 55 years in prison. Defendant contends the court failed to give adequate weight to mitigating evidence. Specifically, he argues his sentence was excessive given his strong potential for rehabilitation as shown by his minimal criminal history, employment history, and expression of remorse. Additionally, defendant notes he is the parent of four children and, after his arrest, engaged in positive activities and services.

¶ 37 "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010). On review, a defendant's sentence will not be altered absent an abuse of discretion by the trial court. *Alexander*, 239 Ill. 2d at 212, 940 N.E.2d at 1066. "A

sentence will be deemed an abuse of discretion where the sentence is 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212, 940 N.E.2d at 1066 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000)).

¶ 38     "We will not substitute our judgment for that of the trial court simply because we would have weighed the sentencing factors differently." *People v. Kenton*, 377 Ill. App. 3d 239, 245, 879 N.E.2d 402, 407 (2007). "[I]f mitigating evidence is presented at the sentencing hearing, this court presumes that the trial court took that evidence into consideration, absent some contrary evidence." *People v. Shaw*, 351 Ill. App. 3d 1087, 1093, 815 N.E.2d 469, 474 (2004). Additionally, "a defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense." *Shaw*, 351 Ill. App. 3d at 1093-94, 815 N.E.2d at 474.

¶ 39     Here, the record shows the trial court considered and weighed relevant sentencing factors, including factors in mitigation. It does not reflect any improper considerations by the court and it is not the function of this court to reweigh the evidence. Given the seriousness of the offense, we find no abuse of discretion by the trial court.

¶ 40                              III. CONCLUSION

¶ 41     For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs.

¶ 42     Affirmed.