NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240673-U

NO. 4-24-0673

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 11, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| CLYDE WALLACE, | ) | No. 24CF365 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robin L. Schmidt, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Harris and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court erred by not allowing defendant to testify at the hearing on the State's verified petition to deny him pretrial release.

¶ 2    Defendant, Clyde Wallace, appeals the Sangamon County circuit court's order denying his pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). On appeal, defendant argues the court erred by not allowing him to testify at the detention hearing. For the following reasons, we vacate the order and remand for a new detention hearing.

¶ 3                     I. BACKGROUND

¶ 4    On March 28, 2024, the State charged defendant with armed violence (count I) (720

ILCS 5/33A-2(a) (West 2022)), being an armed habitual criminal (count II) (*id.* § 24-1.7(a)), unlawful possession of a weapon by a felon (count III) (*id.* § 24-1.1(a)), and aggravated fleeing or attempting to elude a peace officer (count IV) (625 ILCS 5/11-204.1(a)(1) (West 2022)). That same day, the State filed a verified petition to deny defendant pretrial release pursuant to section 110-6.1 of the Act (725 ILCS 5/110-6.1 (West 2022)).

¶ 5        At the outset, we note the State also filed a verified petition to revoke defendant's pretrial release in Sangamon County case Nos. 23-CF-974 and 23-CF-1103. See *id.* § 110-6. The circuit court held a joint hearing and granted both petitions. However, defendant does not appeal the court's decision revoking his pretrial release. Accordingly, we discuss only those facts necessary to understand the court's decision to deny defendant pretrial release.

¶ 6        To support its request for detention, the State admitted a Sangamon County Sheriff's Office probable cause statement, which described the events leading to defendant's arrest. On March 27, an officer attempted to perform a traffic stop on defendant's vehicle. After the officer activated his emergency lights and siren, defendant fled at a high speed. There were no other occupants in defendant's vehicle during the pursuit. Eventually, defendant parked his vehicle and climbed onto the roof of a nearby residence. When defendant came down off the roof, officers placed him under arrest. The officers then located a .380-caliber magazine in defendant's vehicle and a loaded pistol on the residential roof. The ammunition in the pistol matched the ammunition in the magazine located in defendant's vehicle. The State proffered this was defendant's second pending charge for aggravated fleeing and he was on pretrial release when these offenses occurred. Additionally, defendant's criminal history included convictions for aggravated battery, aggravated robbery, aggravated battery with a firearm, resisting a peace officer, and criminal trespass to a vehicle.

¶ 7    Before beginning his argument, defense counsel stated, "[Defendant] has been subject to what is in his view an excessive amount of surveillance for someone who is on electronic monitoring but without any type of order as far as confinement to a geographic location." Defense counsel then argued, based on *People v. Quintero*, 2024 IL App (1st) 232129-U, "fleeing from the police cannot be used as a basis for willful flight to avoid prosecution in pretrial detention hearings." In lieu of detention, defense counsel requested home confinement, noting defendant has a stable residence, works at Sonic, and cares for his infant daughter.

¶ 8    After considering the evidence and arguments presented, the circuit court granted the State's petition for pretrial detention, finding defendant "possess [*sic*] a real and present threat to the safety of [a] person or persons in the community, based on the specific and articulable facts of the case." In its oral ruling, the court noted it considered (1) the nature and circumstances of the offenses, including that a weapon was found; (2) defendant's prior criminal history, which includes prior possession of weapons; (3) defendant was on pretrial release in two separate cases when these offenses occurred; and (4) being on electronic monitoring did not deter defendant from fleeing from the police. Based on these factors, the court found defendant had shown he refuses to follow court orders and there were no conditions it could impose to mitigate the threat defendant posed. The court also found defendant posed a risk of willful flight due to his failure to comply with prior court orders and his decision to flee from the police.

¶ 9    When the circuit court began its oral ruling on the State's petition to revoke defendant's pretrial release, the following exchange took place:

"THE DEFENDANT: Excuse me, Your Honor.

THE COURT: Sir.

THE DEFENDANT: Yes, I asked him to testify on this matter because you need context. You don't have the context that you need that's relevant to this matter.

THE COURT: Everything you're saying right now is being recorded.

THE DEFENDANT: I understand.

THE COURT: These are three felony matters behind you.

THE DEFENDANT: Yes, Your Honor.

THE COURT: I think [defense counsel] has probably indicated to you that it would be against his advice for you to speak here in court today.

THE DEFENDANT: He did. I told him I respect that thoroughly and I would ask him to please respect my wishes and allow me to address these issues and to give the Court context as to what's really going on. Because you're hearing—

THE COURT: Sir, I can appreciate that. But I've already made my ruling with respect to your pretrial detention. Really probably not going to do you a lot of good today to explain your conditions. I can assure you that the State will be getting that transcript if you did that today. Do you understand me? I don't want you to place yourself in further jeopardy.

THE DEFENDANT: I understand. He told me the same thing. There is no jeopardy I would be placing myself in. I'm not trying to get up there and lie and think that I'm some type of silver-tongue person just going to change everything. I'm not the one that does the lying. I've always said my truth and it's always been proven and that's why I'm in this situation right now. Because last year my truth was proven and I was found not guilty in a bench trial. And ever since then, I've

been targeted by them and the police department. Three months later, I was retaliated against.

And the charges he's talking about these firearms, those firearms were brought against me, I was alleged to have used these in a robbery. And guess what, I was found not guilty. And three months later these same charges, these same firearms were brought back. That's the armed habituals [*sic*], the first ones that I have that he's talking about.

THE COURT: [Defendant], before you get into all of the specifics of these offenses, I need you to understand you remain presumed innocent at every stage of these proceedings.

THE DEFENDANT: Yes.

THE COURT: I know this sounds harsh to you today.

THE DEFENDANT: It is harsh.

THE COURT: I mean it with respect to pretrial detention, this is meant to be harsh today.

At this point in time, I don't find that it's safe to put you back into the community. That has nothing to do with the later issues for trial. Okay. This is simply for pretrial detention purposes."

The court then continued with its ruling on the State's petition to revoke defendant's pretrial release. Following the hearing, the court entered a written order consistent with its oral findings.

¶ 10 Defendant filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Dec. 7, 2023). Specifically, defendant utilized the notice of appeal form in the Article VI Forms Appendix to the Illinois Supreme Court rules. See Ill. S. Ct. R. 606(d) (eff. Dec.

7, 2023); Ill. S. Ct. Rs. Art. VI Forms Appendix R. 604(h). The form lists several potential grounds for appellate relief and instructs the appellant to "check all that apply and describe in detail." Defendant indicated the circuit court's detention order should be vacated and checked the boxes for the following grounds for relief:

"[(1)] The State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case.

\*\*\*

[(2)] The State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight.

\*\*\*

[(3)] The court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor."

The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal and filed a memorandum pursuant Rule 604(h).

¶ 11          This appeal follows.

¶ 12                                    II. ANALYSIS

¶ 13          In addition to the issues raised in defendant's notice of appeal, OSAD argues the circuit court erred by not allowing defendant to testify at the detention hearing. The State responds

the court did not err because (1) defendant did not ask to testify until after the court began its oral ruling and (2) defendant's colloquy with the court was akin to defendant testifying. Because we find this issue dispositive, we will address it first.

¶ 14　　Defendant admits he failed to raise this issue in his notice of appeal but contends it may be reviewed under the plain error doctrine. To support this contention, defendant cites *People v. Gatlin*, 2024 IL App (4th) 231199, ¶ 23, in which this court held it was second-prong plain error for a defendant not to be physically present for his detention hearing when none of the conditions listed in subsection 110-6.1(f)(3.5) of the Act were satisfied. See 725 ILCS 5/110-6.1(f)(3.5) (West 2022) (outlining the circumstances in which a pretrial detention hearing may be held via two-way audio-visual communication). In so holding, we distinguished *People v. Martin*, 2023 IL App (4th) 230826, ¶ 17, where we declined to apply the plain error doctrine to the issue of whether the State had authority to file a verified petition to deny pretrial release. The distinguishing factor between *Martin* and *Gatlin* was whether the issue raised "was obvious on the first day the Act was in effect." *Gatlin*, 2024 IL App (4th) 231199, ¶ 22. For the same reasons we outlined in *Gatlin*, we find a defendant's right to testify at a detention hearing is an issue which was obvious at the outset of the Act, and thus, it can be reviewed under the plain error doctrine. *Id.*

¶ 15　　The plain error doctrine is "a narrow and limited exception to the general rule of procedural default." *People v. Jones*, 2023 IL App (4th) 230837, ¶ 11. A reviewing court may consider unpreserved issues under the plain error doctrine when:

> " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the [proceeding] and

challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 75 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

Under either prong of the plain error doctrine, the burden is on the defendant to demonstrate a clear or obvious error occurred. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Accordingly, when this court undertakes a plain error analysis, we must first determine if an error occurred.

¶ 16    Defendant argues it was error for the circuit court to not allow him to testify at the detention hearing. He cites subsection 110-6.1(f)(3) of the Act, which states:

"The defendant has the right to be represented by counsel, and if he or she is indigent, to have counsel appointed for him or her. *The defendant shall have the opportunity to testify*, to present witnesses on his or her own behalf, and to cross-examine any witnesses that are called by the State." (Emphasis added.) 725 ILCS 5/110-6.1(f)(3) (West 2022).

The State concedes defendant had a right to testify at the detention hearing but argues the court did not err because (1) the hearing had concluded when defendant requested to testify and (2) the colloquy between defendant and the court was akin to testimony and considered by the court in its decision.

¶ 17    To address the parties' contentions, we must conduct a review of the applicable statutory language. "Issues requiring statutory interpretation are questions of law subject to *de novo* review." *Gatlin*, 2024 IL App (4th) 231199, ¶ 19 (quoting *Evans v. Cook County State's Attorney*, 2021 IL 125513, ¶ 27). Our supreme court has held "[t]he primary objective of statutory construction is to ascertain and give effect to the legislature's intent." *Id.* In determining legislative intent, "[t]he most reliable indicator *** is the language of the statute, given its plain and ordinary

meaning." *Id.*

¶ 18        Both parties agree the Act provides a defendant the right to testify at a detention hearing. 725 ILCS 5/110-6.1(f)(3) (West 2022). However, the State argues the circuit court did not err in not allowing defendant to testify at the detention hearing because defendant did not request to testify *at the hearing* and did so only when the court was providing its oral ruling. According to the State, the request was untimely because the hearing had concluded when defendant made his request. However, the State provides no citations to support this assertion. Instead, the State simply states, "nothing in the [Act] grants the defendant a right to wait until the hearing has concluded and an adverse ruling has been entered, to demand to testify for the first time. Clearly, there should be no right to testify after a judge has ruled at the detention hearing." We are unpersuaded by this argument. Initially, we note there is no indication in the record that the court complied with the statute's requirement defendant be given the *opportunity to testify* earlier in the detention hearing. While the parties had finished providing evidence and argument, the court was still in the process of providing its oral rulings when defendant interrupted and requested to testify. The court had not concluded its rulings and the hearing was still in progress. Based on this, the court could have, and *should have*, allowed defendant an opportunity to be sworn and provide testimony, especially in light of defendant's contention that he informed his attorney he wanted to testify and his attorney refused his request.

¶ 19        The State also contends the colloquy between defendant and the circuit court was akin to testimony, and thus, defendant had "an opportunity to testify." We are equally unpersuaded by this argument. "When a statute contains a term that is not specifically defined, it is entirely appropriate to look to the dictionary to ascertain the plain and ordinary meaning of the term." *People v. Chapman*, 2012 IL 111896, ¶ 24. According to Black's Law Dictionary, to "testify" is

- 9 -

defined as "[t]o give evidence as a witness." Black's Law Dictionary (11th ed. 2019). Likewise, a "witness" is defined as "[s]omeone who gives testimony under oath or affirmation (1) in person, (2) by oral or written deposition, or (3) by affidavit." Black's Law Dictionary (11th ed. 2019). In this case, although defendant had a colloquy with the court, he was not under oath. Additionally, it is clear from the record the court was attempting to prevent defendant from providing incriminating information about the case. While this attempt was clearly out of respect for defendant's right against self-incrimination, the court's effort to limit defendant's statement makes it apparent the colloquy was not akin to testimony. For these reasons, we find the circuit court erred when it did not provide defendant an opportunity to testify, as required by the Act.

¶ 20 Now that we have determined an error occurred, defendant requests we analyze this error under the second prong of the plain error doctrine. To establish second-prong plain error, the error must be " 'so serious that it affected the fairness of the [proceeding] and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Gilker*, 2023 IL App (4th) 220914, ¶ 75 (quoting *Piatkowski*, 225 Ill. 2d at 565). This court has held, "[a] misapplication of the law rises to plain error when it affects a defendant's fundamental right to liberty." *People v. Jones*, 2023 IL App (4th) 230837, ¶ 11. A defendant's liberty is at stake at a detention hearing, and if the circuit court decides to detain him, he may remain incarcerated until the disposition of his case. Further, "[t]he central premise of the Act was to abolish monetary bail and default to a defendant's presumptive eligibility for pretrial release." *Gatlin*, 2024 IL App (4th) 231199, ¶ 23. Further, as discussed above, the Act clearly required defendant have an opportunity to testify. Under these circumstances, providing a defendant with the opportunity to testify is paramount. Therefore, we conclude the court's failure to provide defendant the opportunity to testify at the detention hearing constitutes second-prong plain error.

¶ 21 Relying upon *People v. McCarthy-Nelson*, 2024 IL App (4th) 231582-U, ¶ 18, defendant requests this court remand for a hearing to determine the least restrictive conditions of his pretrial release, rather than remand for a new detention hearing. However, *McCarthy-Nelson* is not analogous to defendant's situation. In *McCarthy-Nelson*, the State and circuit court failed to timely conduct a detention hearing. *Id.* ¶ 13. Therefore, we determined, if the case were remanded for a new detention hearing, there would be no relief for the defendant. *Id.* ¶ 14 ("[W]e could not effectively grant him relief because the prior violation of the statute's timing requirements makes it impossible to now have a timely hearing."). Conversely, in this case, we may reverse and remand for a new detention hearing, where defendant will be given the opportunity to testify. This course of action provides defendant with a remedy. Accordingly, we reverse and remand for a new detention hearing.

¶ 22                                        III. CONCLUSION

¶ 23 For the reasons stated, we vacate the circuit court's order denying defendant pretrial release and remand with directions for the court to conduct a new detention hearing in compliance with the Act.

¶ 24 Vacated and remanded.