2021 IL App (2d) 200281-U
No. 2-20-0281
Order filed March 15, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-2051 |
| CASSIDY L. CHEEK, | ) ) ) | Honorable George D. Strickland, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Zenoff and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion when it: (1) limited the scope of cross-examination of the arresting officer; (2) limited the scope of closing argument to exclude defendant's claim that the victim had violent tendencies; and (3) admitted evidence of a prior bad act.  Defendant forfeited her argument that the trial court failed to properly instruct the jury concerning the prior bad act.  She also forfeited an argument that she was prejudiced by comments contained within her own exhibit.  The evidence was sufficient to convict defendant of two counts of domestic battery.  Affirmed.

¶ 2    A jury convicted defendant, Cassidy L. Cheek, of two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (2) (West 2018)) (bodily harm and physical contact of an insulting and provoking nature, respectively).  The offenses were enhanced to a Class 4 felony due to

defendant's criminal history. 720 ILCS 5/12-3.2(b) (West 2018)). The trial court sentenced defendant to 30 months' felony probation. Defendant appeals, challenging several of the trial court's discretionary rulings and the sufficiency of the evidence. We affirm.

¶ 3                                I. BACKGROUND

¶ 4      Defendant and the victim, Kyle Kozina, both in their twenties, had been in an on-again, off-again romantic relationship for more than two years. Kyle lived with his parents, and defendant lived in the house next door, which she rented from Kyle's parents. In the early morning hours of September 11, 2019, defendant and Kyle had an altercation. They both had been drinking. They began to argue about defendant's ex-boyfriend. Defendant scratched Kyle about the chest and neck, drawing blood. Kyle ran to his parents' house, wearing only his boxers. Kyle's parents called the police. According to Kyle, defendant attempted to use a hammer and a pocketknife against him. According to defendant, she acted in self-defense. The State charged defendant with two counts of domestic battery.

¶ 5                            A. Pre-Trial Rulings

¶ 6                    1. Prior Acts: 2016 Stabbing and 2017 Battery

¶ 7      The State moved *in limine* to introduce evidence of two prior acts of domestic violence by defendant pursuant to section 115-7.4 of the Criminal Code of 1963 (Code). 725 ILCS 5/115-7.4 (West 2018). Section 115-7.4 allows the State to use evidence of prior acts of domestic violence to show a propensity to commit the same. *Id.*; *People v. Dabbs*, 239 Ill. 2d 277, 293 (2010). The first act took place on September 30, 2016. Defendant, Kyle, and a friend had been drinking. Defendant became upset at the mention of an ex-boyfriend. Defendant kicked Kyle in the face; she bit and scratched his arms. Finally, as he turned away, defendant stabbed Kyle in the back.

Kyle required hospitalization for his injuries. He provided a written statement. The State charged defendant with aggravated and domestic battery but later *nolle prossed* the charges.

¶ 8     The second act took place on June 17, 2017. Defendant had again been drinking. She fought with a boyfriend (not Kyle) in her parents' home. Her father asked her to be quiet and stop damaging property. Defendant then struck her father in the face multiple times. She also struck her mother in the face. Her parents called the police and submitted written statements. Defendant pleaded guilty to domestic battery.

¶ 9     Defense counsel argued that admitting prior acts of domestic violence would result in undue prejudice. He further argued that the 2017 incident did not bear sufficient factual similarity to the charged offense.

¶ 10     The court granted the State's motion in part. It would allow the State to introduce evidence of the 2016 incident to show defendant's propensity to commit acts of domestic violence. It explained that the facts in the 2016 incident were "very similar" to the charged offense. Both incidents involved drinking, defendant becoming enraged upon the mention of an ex-boyfriend, and defendant using a knife against Kyle. The 2016 incident was also relevant to the parties' state of mind during the charged offense. However, the court barred the State from introducing evidence of the 2017 incident. The court explained that, while the 2017 incident bore some factual similarity to the charged offense, the prejudicial impact of admitting a second prior act would be too great.

¶ 11                                2. July 2019 Arrest

¶ 12     Next, the State moved *in limine* to bar evidence of defendant's July 2019 arrest for resisting a peace officer and obstructing justice. Defense counsel objected. He explained that the arresting officer in the July incident, Deputy Stephen Campobasso, also arrested defendant for the instant domestic battery. Campobasso can be heard on the September 2019 body camera saying, "I

arrested her [two] months ago as a passenger in a vehicle. That's hard to do," and "I arrested her two months ago for obstructing. She's got a mouth. She's terrible. She's saying self-defense. I don't care." The court noted that, usually, it is the defense that seeks to exclude other-crimes evidence.

¶ 13    Defense counsel explained that he wished to show that Campobasso was biased against defendant, and that is why Campobasso believed Kyle's version of events over defendant's version of events. Further, counsel wished to show that Campobasso was not justified in arresting defendant in July. During the July incident, Campobasso stopped a vehicle in which defendant was a passenger. Campobasso asked defendant for identification. Defendant refused, becoming belligerent. The interaction escalated, and Campobasso arrested defendant. Counsel wanted the trial court to instruct the jury that, in Illinois, a passenger in a vehicle is not required to show identification. Counsel also sought to inform the jury that the obstruction charge, which had been based on defendant's refusal to provide identification, had been dismissed.

¶ 14    The trial court granted defendant's request in part. It would *allow* Campobasso's reference to the July arrest contained in the instant arrest's body camera footage. Specifically, the court stated: "So you want that tape to come in, that part of it, I'll allow it. If you want to bring out the fact that he's arrested her before, I'll allow that too." However, the court indicated it would *not* instruct the jury that, in Illinois, a passenger in a vehicle is not required to produce identification, and it would not allow defense counsel to inform the jury that the obstruction charge was dismissed. It stated: "I'm not allowing you to do it. I'll tell you right now that's not going to happen because the jury is not capable of discerning the law in the other case, nor should they be. That's not their role."

¶ 15    While the trial court explained its ruling, defense counsel interjected: "If I can't tie up the story with the [fact that the] charge was dismissed—." The next day, before trial, defense counsel raised the point again. If the court would not issue a jury instruction that, in Illinois, a passenger in a vehicle is not required to produce identification, and, if counsel could not inform the jury that the obstruction charge was dismissed, then counsel agreed that evidence concerning the July incident should be excluded. Counsel withdrew his objection to the State's motion *in limine*. The court ordered the State to redact the statements at issue from the video.

¶ 16                                B. Trial

¶ 17                            1. The State's Case

¶ 18                            i. Kyle's Testimony

¶ 19    Kyle testified that he had no memory of the September 11, 2019, battery. The State asked numerous details about the battery, which Kyle had previously provided to Campobasso. On each point, Kyle stated that he did not remember. Kyle blamed alcohol for his absolute memory lapse.

¶ 20    Similarly, Kyle testified that he had no memory of the 2016 stabbing. Again, the State asked numerous details about the stabbing, which Kyle had previously provided to the investigating officers. On each point, Kyle stated that he did not remember. Kyle acknowledged, however, that he had signed a written statement detailing the stabbing. When shown the statement, Kyle agreed that the signature was his.

¶ 21    During cross-examination, the defense asked Kyle about a prior act:

"Q. Is it a fair statement that you get aggressive when you're intoxicated?

A. Yes.

Q. Do you recall *breaking the window* of the residence that [defendant] was renting next door to your residence in the summer of 2019 to get in?" (Emphasis added.)

¶ 22    The State objected, and the following sidebar ensued:

"THE COURT: Well, this is another incident.  Why wasn't this brought up in pretrial motions like the other incidents were?  State had other incidents and asked me to admit them.  This is another incident.  You never asked to admit this.

[DEFENSE COUNSEL]: This is cross-examination on him becoming aggressive when he's intoxicated.

THE COURT: I understand that it's cross-examination.  Don't patronize me.  It's another incident that you should have brought to my attention before the trial, not when the jury is sitting there right now.  Other incidents of misconduct for either side need to be brought to the Court's attention before we're in front of the jury like we did yesterday with the other incidents so I can rule in advance whether I'm going to allow it."

The trial court sustained the objection.

¶ 23    During lunch recess, the trial court again admonished defense counsel against introducing evidence of prior acts absent a motion *in limine*:

"THE COURT: ***[Y]ou're saying you don't think you have to give discovery about other incidents, I disagree with that.  If you have other incidents like that[,] in my discretion [and] because I believe in full discovery, I'm going to bar them.  So don't even bother trying to go into one of those.  But on top of that, further, let's say he denied [breaking the window].  How would you have perfected impeachment?  Is there a police report?  Did you have a witness who would have perfected impeachment?

[DEFENSE COUNSEL]: I would have called my client who was at home at the time.

THE COURT: Well, you know, if you didn't, it would have been unethical for you to confront him with that if you can't perfect impeachment. \*\*\*.

So let's be clear. If you have any undisclosed incidents \*\*\*, don't even bother. You are to bring them to my attention. It is in fairness to the Court and the other side that we know before trial happens what kind of evidence the other side is bringing so I can make a ruling on it, and you don't get to deprive me of my right to make a ruling before the trial starts. That's not up to you. It also means this jury has to sit here while we're thrashing through something we could have done yesterday. This is not to occur again."

¶ 24                                    ii. Campobasso's Testimony

¶ 25    Campobasso testified that, in the early morning hours of September 11, 2019, he received a dispatch report concerning a domestic-violence incident at the Kozina property. He did not know who had phoned the police. He first spoke with Kyle, who appeared impaired by alcohol but not heavily intoxicated. Kyle was not forthcoming, but he was cooperative overall and did not have difficulty remembering the incident. Kyle gave just one version of events. That is, he and defendant had been drinking. They began to argue about defendant's ex-boyfriend. Defendant approached Kyle while holding a hammer. She also pulled a pocketknife out of her pocket. Kyle pushed defendant to the ground and removed the weapons. He then left the property, scared and half dressed. He went next door to his parents' house, and his parents called the police. Campobasso's conversation with Kyle was recorded and marked as the State's Exhibit No. 14C, which was played for the jury.

¶ 26    With the still-shot feature of his body camera, Campobasso took pictures of Kyle's injuries. These injuries included a scratch wound to Kyle's neck (Exhibit No. 1) and a scratch wound to Kyle's chest (Exhibit No. 2). Campobasso observed dried blood on the neck wound.

¶ 27    Campobasso next interviewed defendant. Defendant walked out onto the porch to meet Campobasso, locking the door behind her. Campobasso noticed that the interior lining of her pants pocket was "slightly" pulled out. Campobasso judged defendant to be heavily intoxicated. Defendant smelled of alcohol, her eyes were bloodshot, and her mood was erratic. She was "loud and agitated." Campobasso asked defendant what happened. Defendant answered, "nothing." Defendant had no visible injuries. Campobasso asked defendant about Kyle's injuries. Defendant again answered that "nothing" happened.

¶ 28    Campobasso placed defendant in the squad car, and he attempted to admonish her pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant interrupted him and began reciting the *Miranda* rights. She said she knew her rights. Defendant then made a series of inconsistent statements, all of them spontaneous and unsolicited. In one version of events, defendant stated that she asked Kyle to leave the house, and, when he did not, she pushed or struck him. In other versions of events, she alternatively alleged mutual combat or self-defense. She stated that she and Kyle had been drinking. They got in an altercation about an ex-boyfriend. Defendant admitted to kicking and scratching Kyle. Defendant also stated that the fight was similar to the 2016 fight, when she stabbed Kyle. Portions of defendant's story matched Kyle's story, such as the location within the house where the altercation occurred. Defendant's conversation with Campobasso was recorded and marked as the State's Exhibit No. 14B, which was played for the jury.

¶ 29    Campobasso did not go inside the house to search for the hammer and pocketknife that Kyle said defendant had used. Campobasso explained that the house was locked; he did not wish to disturb Kyle's father, who had already gone back into the main house; and defendant was waiting in the squad car.

¶ 30    During cross-examination, counsel called Campobasso's attention to a comment made by Kyle:

"Q. One other thing that wasn't discussed when you were asked questions about things was Kyle was telling you, he told you, quote, I'm not going to plead guilty or whatever, I threw her to the ground. Isn't that what he told you?

A. Something along those lines, yes.

Q. And you never followed up with any questions once he said I'm not pleading guilty, but I threw her to the ground? You never asked [him] what led up to that, Kyle, did you?

A. I believe I did."

¶ 31    During redirect, the State revisited Kyle's comment about "pleading guilty":

"Q. And this was made in the context of a larger conversation about what had happened?

A. Yes.

Q. And this is *** while he was describing defending himself from the defendant who was armed with a hammer and a knife?

A. Yes.

Q. It was in the course of that conversation, those statements that he made to you that he said he was really scared when he was talking about her having a hammer in her possession?

A. Correct."

¶ 32    After Campobasso testified, defense counsel moved to admit a second clip from the full body camera video, where Kyle discusses pushing down defendant. Counsel believed that the clip

could be used to impeach Campobasso. Campobasso testified that he asked Kyle why Kyle pushed defendant, but this clip shows that Campobasso did not ask that question. The State explained that Campobasso had thrice questioned Kyle on this topic. The State had chosen not to seek admission of the clip to which counsel referred, because: "*[Kyle's] father was interjecting*, so this is the one from start to finish statement that he made, not the cleanest, same facts \*\*\*." (Emphasis added.) The trial court admitted the second clip.

¶ 33                         iii. The 2016 Stabbing: Officers King and LeMons

¶ 34     William C. King and Lana Marie LeMons testified that they investigated the 2016 stabbing. King and LeMons arrived at the hospital to question Kyle, who had a black eye, bite marks on his arms, and a stab wound on his back. King believed Kyle to be under the influence of alcohol but not heavily intoxicated. LeMons did not believe Kyle to be under the influence. Kyle was reluctant to disclose what had happened. However, he ultimately told the officers that he, defendant, and a friend were drinking at his house. Defendant began to talk about an ex-boyfriend, causing her to become "out of control." Kyle tried to calm her down by giving her a bear hug. When he let her go, she kicked him in the face. She then came toward him with a knife, swinging it "like Zorro." He turned around, and she stabbed him in the back. Kyle recorded his account of the altercation in a signed, written statement. LeMons opined that the nature of Kyle's injuries was consistent with the type of attack he described. Williams spoke with defendant, who was waiting outside Kyle's hospital room. She had been sleeping in a chair. She appeared intoxicated. She had no visible injuries.

¶ 35     The trial court admitted into evidence Kyle's signed, written statement detailing the 2016 stabbing and photographic exhibits of his 2016 injuries. The State rested.

¶ 36                 2. Jury Instructions, Evidentiary Issues, and Closing Argument

¶ 37    The trial court, the State, and defense counsel discussed jury instructions, evidentiary issues, and the scope of closing argument.  These discussions occurred after the close of the State's case and the next morning, prior to defendant's case.

¶ 38    As to jury instructions, the State informed the court that it had the jury instructions.  The State had given the instructions to defense counsel the night before the trial began.  It also had "a supplement" to those instructions.  The State again tendered the instructions to defense counsel.

¶ 39    The next morning, the trial court, the State, and defense counsel again discussed the jury instructions.  The court stated for the record: "[W]e had an informal jury instruction conference yesterday.  We had a number of corrections and additions, so we're going to do the formal jury instructions conference now."  The court ran through each of the instructions.  Relevant here, the following exchange occurred:

> "THE COURT: *** People's Instruction 11 is IPI 3.14.  Any objection?
>
> [DEFENSE COUNSEL]: No.
>
> THE COURT: Given."

¶ 40    As to evidentiary issues, defense counsel again raised the issue of admitting an additional video clip of Kyle's statement.  He again asserted that Campobasso did not follow up as to why Kyle pushed defendant.  The State responded: "[Kyle and Campobasso] are talking about the same thing three times.  *** Well, [in] two of the three conversations *** Kyle says the same thing almost verbatim [so] yes, he did follow up."  Counsel responded: "The State chose to play excerpts as [opposed] to the whole video.  *I have no objection for the whole*."  (Emphasis added.)  The court asked the State why it did not play the whole video, excluding only the reference to defendant's July 2019 arrest.  The State explained: "[Defendant] makes a number of statements [concerning] prior arrests."  Counsel reiterated that he "want[ed] the Kyle statement in its entirety."  The court

offered to send the jury home so counsel and the State could edit the tape overnight. Counsel agreed, stating: "I will sit with [the State] and go through this video and edit it, note the times pursuant to your order of what should be excluded."

¶ 41    The next morning, the trial court asked whether the edited tape was ready. The State answered that they were still waiting for the edited version to be completed, and added: "[Defense counsel] and I last night after court wrote down the times we wanted excluded." Defense counsel offered to proceed without the edited tape. He suggested using the full, hour-long video, and manually stopping and starting at the marked times. The State declined, noting: "Things are said so quickly. In some of the instances it's three or four seconds. There's an editorial by the officer or the victim saying I don't want to press charges, things like that." The court agreed: "Right. I want to make sure we don't end up inadvertently playing something that I barred because it happened so quickly." The edited tape arrived shortly thereafter. The court gave counsel leave to publish the edited tape as Defendant's Exhibit No. 1.

¶ 42    Finally, as to the scope of closing argument, defense counsel sought to argue that Kyle had violent tendencies, as demonstrated when he broke a window to get in the second house. Counsel acknowledged that the court had barred him from asking Kyle whether he recalled breaking a window to get in the second house. However, when the State played State's Exhibit No. 14B, the jury heard defendant asking Campobasso, "What about the time when he broke my window?" As such, counsel believed that the State "opened the door" for him to argue that Kyle had violent tendencies, which would support defendant's claim of self-defense. Neither party had otherwise questioned Campobasso about defendant's statement that Kyle broke her window.

¶ 43    The statements heard in the State's Exhibit No. 14B disclosed the following. Campobasso asked defendant whether she had used anything that might be construed as a weapon, such as a

hammer. When defendant answered, "no," Campobasso asked her why Kyle might lie about that. Defendant answered: "Because I have his cell phone. He broke through my back window. Look at it. Last time I had his phone for two days, he broke through two panes of window." Defendant then complained that Kyle suffered no repercussions for breaking the window, neither from the police nor from Kyle's father. Officer Campobasso replied: "[Kyle's] dad owns that house, doesn't he? *** I don't think his dad is going to pursue charges against his own son for punching a window." Defendant persisted: "Because I had his phone for two days, he punched in two panes of window." Campobasso redirected: "That's not relevant right now. I need to know what happened tonight, or this morning."

¶ 44    The trial court appreciated that counsel's request implicated *People v. Lynch*, 104 Ill. 2d. 194, 199-200 (1984). Evidence of a victim's violent tendencies, known as *Lynch* evidence, can support a defendant's theory of self-defense in two ways. *Lynch*, 104 Ill. 2d. at 199-200; see also Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011). First, the defendant's prior knowledge of the victim's violent tendencies helps to explain his or her perceptions of and reactions to the victim's behavior. *Lynch*, 104 Ill. 2d at 200. Second, regardless of the defendant's prior knowledge, evidence of the victim's violent tendencies tends to support the defendant's account of the altercation. *Id*.

¶ 45    However, the trial court denied counsel's request to argue that Kyle had violent tendencies. It explained: "I'm not going to allow you to argue he actually [broke the window], because there's no evidence that he actually did do it." In the court's view, defendant's statement, which was "part of a long ramble," was not evidence that Kyle broke the window. The court reiterated that, if counsel had wished to introduce evidence to show that Kyle had violent tendencies, counsel would have had to have moved for a pre-trial *Lynch* hearing. The court further commented that, in any

event, breaking a window was an act of property damage, not an act of violence subject to admission pursuant to *Lynch*.

¶ 46                                3. Defendant's Case

¶ 47    Defense counsel played Defendant's Exhibit No. 1 for the jury. The video contained a more complete statement from Kyle regarding the attack. It also contained comments from Campobasso and Kyle's father. Campobasso can be heard informing Kyle about the cycle of domestic abuse. Kyle's father can be heard urging Kyle to press charges. There were no objections. The defense did not present any other evidence or call any witnesses. The defense rested.

¶ 48    The jury convicted defendant of two counts of domestic battery and the trial court sentenced defendant as stated. Defendant moved for a new trial, raising the same arguments as on appeal. The trial court denied the motion, and this appeal followed.

¶ 49                                II. ANALYSIS

¶ 50    On appeal, defendant challenges several of the trial court's discretionary rulings. Specifically, defendant argues that the trial court abused its discretion when it: (1) limited the scope of cross-examination of Campobasso concerning the July 2019 arrest; (2) limited the scope of closing argument to exclude her claim that Kyle had violent tendencies, as demonstrated when he broke the window; (3) admitted evidence of the 2016 stabbing and improperly instructed the jury regarding the 2016 stabbing; and (4) allowed prejudicial statements contained within her own exhibit, Defendant's Exhibit No. 1. Defendant also challenges the sufficiency of the evidence.

¶ 51    For the reasons that follow, we determine that the trial court did not abuse its discretion in limiting cross-examination and closing argument or in admitting evidence. Defendant forfeited her argument that the trial court failed to properly instruct the jury concerning the 2016 stabbing.

She also forfeited her argument that she was prejudiced by statements contained within her own exhibit. The evidence was sufficient to convict.

¶ 52                              A. The Scope of Cross-Examination

¶ 53    Defendant argues that the trial court improperly barred her from confronting Campobasso about his bias. She asserts: "Campobasso states on video to his fellow officer, 'I arrested her two months ago for obstructing. She's got a mouth. She's terrible. She's saying self-defense. I don't care.' The jury was deprived of this bias evidence." Defendant notes that her right to confront the witnesses against her includes the right to "inquire into a witness's bias, interest, or motive to testify falsely." *People v. Coleman*, 206 Ill. 2d 261, 278 (2002). The witness's bias is relevant, as it affects the weight to be given to his or her testimony. *People v. Blue*, 205 Ill. 2d 1, 13 (2001) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). We review a trial court's rulings on the scope of cross-examination for an abuse of discretion. *People v. Jones*, 288 Ill. App. 3d 293, 298 (1997). A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, such that no reasonable man would take the view adopted by the court. *People v. Young*, 381 Ill. App. 3d 595, 600 (2008).

¶ 54    Defendant's argument misconstrues the facts. In its second motion *in limine*, the State sought to exclude evidence of defendant's July 2019 arrest for resisting a peace officer and obstructing justice. Defendant objected, arguing that evidence of the July arrest showed that Campobasso was biased against defendant. The court noted the unusual posture of defendant's objection, remarking that, usually, it is the defendant who seeks to bar other-crimes evidence. Nevertheless, the court ruled that it would *allow* defendant to question Campobasso regarding his reference to the July arrest: "So you want that tape to come in, that part of it, I'll allow it. If you want to bring out the fact that he's arrested her before, I'll allow that too." The court also ruled,

however, that defendant could not introduce evidence to show that, in her view, the July arrest was unjustified. Defendant could not introduce evidence that the obstruction charge had been dismissed, and the court would not instruct the jury that, in Illinois, a passenger in a vehicle is not required to show identification. Again, the court explained: "the jury is not capable of discerning the law in the other case, nor should they be. That's not their role." Defense counsel then withdrew his objection to the State's motion *in limine*. As such, the record demonstrates that the trial court did not "deprive" the jury of evidence of Campobasso's biased remarks. Rather, defense counsel made a strategic decision not to question Campobasso regarding the remarks, because he could not "tie up the story" by arguing that the July arrest was unjustified.

¶ 55 Moreover, to the extent that defendant argues that the trial court abused its discretion by barring evidence that, in her view, shows that the arrest for obstruction was unjustified and by declining to instruct the jury that, in Illinois, a passenger in a vehicle is not required to show identification, we disagree.

¶ 56 When admitting other-crimes evidence, the trial court should not allow the parties to put on a "trial within a trial," with "detail and repetition greatly exceeding what is necessary to establish the particular purpose for the evidence." *People v. Boyd*, 366 Ill. App. 3d 84, 94 (2006). Further, the court, not the jury, is to determine questions of law. *People v. Austin*, 111 Ill. App. 3d 213, 215 (1982). The trial court's limitations on other-crimes evidence is reviewed for an abuse of discretion. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 57 Here, the trial court struck the appropriate balance in allowing evidence of Campobasso's purported bias in arresting defendant in July and indicating that he did not care that she claimed self-defense, while excluding any argument that the arrest for obstruction of justice was

unjustified. Doing so would have created a "trial within a trial" and would have put a question of law before the jury, *i.e.*, the propriety of defendant's July arrest.

¶ 58     Similarly, the trial court properly refused defendant's request to instruct the jury that, in Illinois, a passenger in a vehicle is not required to produce identification. An instruction regarding traffic stops in the context of a battery case was not relevant to the purposes for which the trial court indicated it would permit evidence of the July traffic stop, and would have confused the jury. Jury instructions should not be misleading or confusing. *People v. Bush*, 157 Ill. 2d 248, 254 (1993). Accordingly, the trial court did not abuse its discretion in refusing the traffic jury instruction. *People v. Lovejoy*, 235 Ill. 2d 97, 150 (2009) (decisions on jury instructions reviewed for an abuse of discretion).

¶ 59                         B. The Scope of Closing Argument

¶ 60     Defendant argues that the trial court abused its discretion when it denied her the opportunity to argue in closing that Kyle had violent tendencies, as demonstrated when Kyle broke the window. She argues that evidence of the victim's violent tendencies, known as *Lynch* evidence, would have supported her theory of self-defense. See *Lynch*, 104 Ill. 2d at 199-200. To better understand defendant's argument, we begin by noting what she does *not* argue. Defendant does not challenge the trial court's position that she was required to file a motion *in limine*, preferably pre-trial and certainly before the close of evidence, to seek the admission *Lynch* evidence. Further, defendant does not argue that the trial court should have reopened the proofs to conduct a *Lynch* hearing or otherwise allow the introduction of additional *Lynch* evidence. Rather, defendant contends, based solely on the statements recorded in the State's Exhibit No. 14B, that she should have been allowed to argue in closing that Kyle had violent tendencies. As such, the defendant's argument implicates only the trial court's limitations on the scope of closing

argument, not the court's evidentiary rulings. We review the trial court's limitations on the scope of closing argument for an abuse of discretion. *People v. Ramos*, 2018 IL App (1st) 151888, ¶ 32.

¶ 61 The trial court is afforded broad discretion in controlling the scope of closing argument. *Id*. The court may undertake steps to ensure that defense counsel's argument does not impede the fair and orderly course of the trial or exceed the bounds of proper argument. *Id*. (citing *Herring v. New York*, 422 U.S. 853, 862 (1975)). For example, the court may disallow argument that misquotes the witness testimony. *Id*. The court also may disallow argument based on facts not in evidence. See *People v. Wetzel*, 308 Ill. App. 3d 886, 896 (1999).

¶ 62 Here, the trial court chastised defense counsel for failing to file a motion *in limine* seeking to admit *Lynch* evidence. Had defendant done so, the trial court would have evaluated whether the evidence was sufficiently reliable to show that the incident, in fact, occurred and whether it supported defendant's assertion that Kyle had violent tendencies. Additionally, the trial court would have had the opportunity to weigh the probative value of the evidence against the likely prejudicial impact.

¶ 63 Moreover, with the evidence as described in State's Exhibit No. 14B, the trial court reasonably concluded that the complained of conduct was an act of property damage, not an act of violence that would be admissible pursuant to *Lynch*. In the video, defendant claimed that Kyle "broke through my back window. Look at it. Last time I had his phone for two days, he broke through two panes of window." Simply put, this describes property damage, and, more particularly, Kyle breaking the window of a house owned by his father to retrieve his cell phone. Further, defendant's argument to the court that breaking the window was an act of violence because she was in the house when it happened and was "terrified" was unavailing, because there was no evidence presented at trial that she was in the house at the time.

¶ 64    In sum, the trial court properly exercised its discretion to exclude argument that would have run contrary to the fair and orderly administration of justice and that was based on facts not in evidence.

¶ 65                     C. Other Crimes: The 2016 Stabbing

¶ 66                              1. Admissibility

¶ 67    Defendant argues that the trial court abused its discretion in admitting, pursuant to section 115-7.4 of the Code, evidence of the 2016 stabbing to show her propensity to commit acts of domestic violence.  725 ILCS 5/115-7.4 (West 2018).  The admissibility of other-crimes evidence is within the trial court's discretion, and we will not disturb its decision absent an abuse of that discretion.  *People v. Pikes*, 2013 IL 115171, ¶ 12.

¶ 68    Section 115-7.4(a) provides:

> "(a) In a criminal prosecution in which the defendant is accused of an offense of domestic violence ***, evidence of the defendant's commission of another offense or offenses of domestic violence is admissible, and may be considered for its bearing on *any matter* to which it is relevant."  (Emphasis added.)  725 ILCS 5/115-7.4 (West 2018).

"Any matter to which it is relevant" includes a defendant's propensity to commit a crime of domestic violence. *Dabbs,* 239 Ill. 2d at 295.

¶ 69    The court must consider whether the probative value of the other-crimes evidence is outweighed by its prejudicial effect.  *Pikes*, 2013 IL 115171, ¶ 11.  To this end, section 115-7.4(b) provides:

> "(b) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:
>
> (1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances." 725 ILCS 5/115-7.4 (West 2018).

¶ 70 Defendant argues that the trial court did not properly assess the probative value of the evidence against its likely prejudicial effect. Specifically, defendant challenges the trial court's weighing of the second factor, the degree of factual similarity between the 2016 stabbing and the charged offense. She notes that the 2016 stabbing resulted in severe injury, whereas the charged offense did not.

¶ 71 We are not persuaded. The difference between the respective injuries is due not to defendant's actions, but to Kyle's reaction. In both incidents, defendant came at Kyle with a weapon. In 2016, Kyle turned his back to avoid attack. In 2019, he fled. The trial court reasonably found a high degree of factual similarity between the 2016 stabbing and the charged offense, where both incidents involved drinking, defendant becoming enraged upon the mention of an ex-boyfriend, and defendant attempting to use a knife against Kyle.

¶ 72 The remaining two factors also support the trial court's ruling. As to the first factor, proximity in time, the 2016 stabbing occurred three years prior to the charged offense. Courts regularly admit other-crimes evidence that occurred *more* than three years prior the charged offense. See, *e.g.*, *People v. Donoho*, 204 Ill. 2d 159, 186 (2003) (involving a 12- to 15-year gap in conduct); *Illgen*, 145 Ill. 2d at 371 (involving many incidents of prior abuse, occurring between 3 and 17 years prior to the charged murder). The three-year timeframe encapsulates defendant and Kyle's relationship, and the trial court reasonably determined that events occurring in that context were not too remote. See *Illgen*, 145 Ill. 2d at 371.

¶ 73     As to the third factor, the trial court reasonably determined that the 2016 stabbing was relevant to the parties' state of mind during the instant offense.  For example, evidence of the 2016 stabbing, which resulted in Kyle's hospitalization, explained why Kyle fled when defendant pulled a small knife from her pocket and why Kyle told Campobasso that he was afraid.

¶ 74     Also, we note that the trial court took care to limit potential prejudice.  The State sought to admit *two* prior acts of domestic violence, the 2016 stabbing and the 2017 battery to defendant's parents.  The court recognized that the 2017 battery bore some factual similarity to the charged offense to the extent both incidents involved drinking and a fight with a boyfriend.  However, the court determined that the prejudicial impact of admitting the 2017 act of domestic violence would be too great.  Under these circumstances, we cannot hold that the trial court abused its discretion in admitting evidence of the 2016 stabbing to show propensity pursuant to section 115-7.4 of the Code.

¶ 75                              2. Limiting Instructions

¶ 76     Defendant next argues that the trial court abused its discretion when it failed to offer an adequate limiting instruction: (1) orally, prior to the admission of the other-crimes evidence; and (2) in writing, prior to deliberation.  Defendant notes that, "the preferred practice is for the trial court to instruct the jury, not only at the close of the case, but also when other-crimes evidence is admitted, of the limited purpose for which it may consider the other-crimes evidence." *People v. Johnson*, 2013 IL App (2d) 110535, ¶ 74.  A trial court's decision to provide or tailor a limiting instruction is reviewed for an abuse of discretion.  *Id*. ¶ 75.

¶ 77                    i. Limiting Instruction Prior to the Admission of Evidence

¶ 78     We first address the absence of an oral limiting instruction prior to the admission of the other-crimes evidence. Defendant argues that, prior to the admission of the other-crimes evidence,

the trial court erred by failing to inform the jury that defendant was not on trial for the 2016 stabbing. We disagree.

¶ 79    First, we note that defense counsel did not request an oral limiting instruction or object that none had been given. Therefore, the issue is forfeited. *People v. Mendez*, 2013 IL App (4th) 110107, ¶ 32.

¶ 80    Forfeiture aside, the court is not required to give an oral limiting instruction prior to the introduction of other-crimes evidence; it is merely a preferred practice. See *Johnson*, 2013 IL App (2d) 110535, ¶ 74. The trial court's failure to issue oral limiting instructions in conjunction with the admission of the other-crimes evidence does not mandate reversal, particularly in the absence of undue prejudice. See *Mendez*, 2013 IL App (4th) 110107, ¶ 32 (citing *People v. Butler*, 377 Ill. App. 3d 1050, 1067 (2007)). We note that, often, as in *Johnson*, the purpose of the oral limiting instruction is to guard against the prejudice that would result if the jury were to consider the other-crimes evidence for propensity. Here, the risk of prejudice resulting from consideration of the other-crimes evidence for propensity was not at issue; the jury *was* permitted to consider the evidence for propensity. Defendant's argument fails.

¶ 81                             ii. Limiting Instruction Prior to Deliberation:

People's Instruction 11 and IPI Criminal No. 3.14

¶ 82    We next address defendant's claim that the instruction given prior to deliberation, People's Instruction 11, failed to accurately inform the jury of the law. The purpose of jury instructions is to provide the jury with correct legal rule that can be applied to the evidence to guide the jury toward a proper verdict. *People v. Pierce*, 226 Ill. 2d 470, 475 (2007). In determining whether the instructions accurately inform the jury of the law, the instructions should be read as a whole. *People v. Nere*, 2018 IL 122566, ¶ 67. The trial court's decision to give or refuse a particular

instruction is reviewed for an abuse of discretion. *Id*. ¶ 29. However, we review *de novo* whether an instruction accurately states the law. *Id*.

¶ 83    Here, the People's Instruction 11 provided:

> "Evidence has been received that the defendant has been involved in offenses other than those charged in the indictment.
>
> This evidence has been received on the issues of defendant's intent, motive, propensity to commit acts of domestic violence, and the history and context of the relationship, and may be considered by you only for that limited purpose.
>
> It is for you to determine what weight should be given to this evidence on the issues of the defendant's intent, motive, propensity to commit acts of domestic violence, and the history and context of the relationship."

¶ 84    Defendant contends that, in crafting People's Instruction 11, the State deviated from the standard language of the Illinois Pattern Jury Instructions, Criminal, No. 3.14 (approved Oct. 17, 2014) ("Proof of Other Offenses or Conduct") (hereinafter IPI Criminal No. 3.14), which provides:

> "[1] Evidence has been received that the defendant[s] [(has) (have)] been involved in [(an offense) (offenses) (conduct)] other than [(that) (those)] charged in the [(indictment) (information) (complaint)].
>
> [2] This evidence has been received on the issue[s] of the [(defendant's) (defendants')] [(identification) (presence) (intent) (motive) (design) (knowledge) (____)] and may be considered by you only for that limited purpose.
>
> [3] It is for you to determine [whether the defendant[s] [(was) (were)] involved in [(that) (those)] [(offense) (offenses) (conduct)] and, if so,] what weight should be given to this evidence on the issue[s] of ____." IPI Criminal No. 3.14.

¶ 85    Defendant complains that: (1) in paragraph one, the State used the word "offenses," where it should have used the word "conduct;" (2) in paragraph two, the State included the phrase "the history and context of the relationship;" and (3) in paragraph three, the State omitted the bracketed phrase, "whether the defendant was involved in that conduct."

¶ 86    Defendant acknowledges that she did not object the People's Instruction 11 and, therefore, the issue is forfeited.  She argues that we should overlook the forfeiture, however, because the State violated Supreme Court Rule 451(d) (eff. April 8, 2013).  Rule 451(d) provides in part:

> "(d) Procedure.  The court shall be provided an original and a copy of each instruction, and a copy shall be delivered to each opposing counsel.  In addition to numbering the copies and indicating who tendered them, ***, the copy shall contain a notation substantially as follows:
>
> 'IPI Criminal No. ___' or 'IPI Criminal No. ___ Modified' or 'Not in IPI Criminal'
>
> as the case may be."

¶ 87    The State designated its tendered instruction "IPI No. 3.14," when, in defendant's view, the State should have designated the instruction "IPI No. 3.14, Modified."  According to defendant, the "modified" designation would have alerted her that the standard language had been changed, so that she could inquire into the appropriateness of the change.  Absent the "modified" designation, defendant trusted that the State had faithfully tracked the IPI language, giving her no good-faith basis to object.  Thus, defendant asks this court to overlook forfeiture in the interests of justice.  Forfeiture is a limitation on the parties, not the courts.  *Jill Knowles Enterprises, Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 22.  The court may overlook forfeiture and address the merits when necessary to achieve a just result or maintain a sound and uniform body of precedent.  *Id*.

¶ 88    We determine, however, that relaxing the rule of forfeiture is not necessary to achieve a just result in this case. Defendant raised a similar argument in her motion for a new trial. The trial court rejected it, noting that it gave defendant ample time to review the jury instructions and offer amendments. Indeed, we note that the trial court and the parties conducted an informal instructions conference off the record. The next day, the court stated for the record: "[W]e had an informal jury instruction conference yesterday. We had a number of corrections and additions[.]" As such, we cannot be certain that defendant did not more expressly agree to precise language in the People's Instruction 11. For example, the committee notes emphasize that the language in paragraph three, "whether the defendant was involved in that conduct," is *not* to be given when the defendant concedes that she committed the prior act at issue. See IPI Criminal No. 3.14, Committee Note. Here defendant did not testify and the evidence of the 2016 offense was essentially uncontroverted. We do not know what concessions were made at the informal conference. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).

¶ 89    Moreover, a comparison of People's Instruction 11 and IPI Criminal 3.14 demonstrates that People's Instruction 11 was not a modified instruction such that defendant's forfeiture should be excused. People's Instruction 11 utilized only language from the set of options provided by the standard IPI. For example, in paragraph one, the word "offenses" and "conduct" are both valid options provided by the standard IPI. That defendant would have preferred different selections within the set of options provided by the standard IPI does not mean that the State proffered a modified instruction. *Cf. Ryan v. Fleischman*, 64 Ill. App. 3d 75, 77-78 (1978) (designating as modified an instruction that deleted an entire paragraph from the standard IPI). Paragraph two provides a non-exhaustive list of bases for considering the offense at issue and even provides a

blank indicating that non-included bases may be inserted where appropriate. The "history and context of the relationship" was certainly an appropriate basis under the circumstances. Lastly, the omission of "whether the defendant was involved in that offense and, if so" presumably resulted from the State's assessment that the 2016 offense evidence was uncontroverted.

¶ 90    In sum, the other-crimes evidence was properly admitted, defendant forfeited her arguments concerning jury instructions, and, forfeiture aside, she has failed to convince this court that any error occurred.

¶ 91                            D. Defendant's Exhibit No. 1

¶ 92    In the last of her evidentiary arguments, defendant complains that she was prejudiced by the admission of certain "hearsay" statements contained within her own exhibit, Defendant's Exhibit No. 1. Specifically, defendant complains that Campobasso can be heard telling Kyle that defendant is "going to kill you one day," and Kyle's father can be heard urging Kyle to press charges. She notes that Kyle's father's comments alerted the jury that she went unpunished for the 2016 stabbing, exacerbating the prejudicial impact of that evidence. Defendant's argument consists of a single paragraph, without citation to authority. It is unclear whether defendant argues that the trial court abused its discretion in admitting the challenged statements, or that the State committed prosecutorial misconduct by editing the tape without providing defendant the opportunity to review it. Defendant did not object to these statements at trial.

¶ 93    Defendant's argument is forfeited pursuant to Supreme Court Rule 341(h)(7) (eff. May 25, 2018). Rule 341(h)(7) requires an appellant to adequately develop his or her argument with citation to relevant authority. *Id*. This court is "entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented, and it is not a repository into which an appellant may foist the burden of argument and research." *Velocity Investments LLC v. Alston*,

397 Ill.App.3d 296, 297 (2010). Failure to comply with Rule 341(h)(7) may result in forfeiture. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12 (plaintiff's argument, which consisted of two conclusory paragraphs, was forfeited for failure to comply with Rule 341(h)(7)). Here, as stated, defendant's argument consists of one conclusory paragraph. It is unclear whether defendant is challenging an evidentiary ruling or alleging prosecutorial misconduct. Thus, we determine that forfeiture is appropriate.

¶ 94 Forfeiture aside, we note that defendant's argument misconstrues the facts. Defense counsel asserts that he was "at the mercy of the State playing excerpts of a body cam video which it had no opportunity to review." This claim is rebutted by the record. Defense counsel first informed the court that he had no objection to running Kyle's statement in its entirety. The State warned defense counsel that the clip contained potentially prejudicial comments by Kyle's father. Defense counsel next informed the court that he would sit with the State, go through the tape, and edit it. The next day the State recounted that it had, in fact, gone through the tape with defense counsel. While waiting on the IT team to return the edited tape, defense counsel offered to play the unedited tape and press stop and fast-forward where appropriate. The State again warned that the unedited tape contained prejudicial material, which would be difficult to excise manually. The edited tape was played. Defense counsel did not then object to any statements contained therein, *another* basis by which we could find this argument forfeited.

¶ 95 Defendant's argument concerning prejudicial statements contained within her own exhibit is, without question, forfeited.

¶ 96                          E. Sufficiency of the Evidence

¶ 97    Defendant argues that the evidence was insufficient to convict her of two counts of domestic battery pursuant to sections 12-3.2(a)(1), (2) of the Code.  Sections 12-3.2(a)(1), (2) provide:

> "(a) A person commits domestic battery if he or she knowingly without legal justification by any means:
>
> > (1) Causes bodily harm to any family or household member;
> >
> > (2) Makes physical contact of an insulting or provoking nature with any family or household member."  720 ILCS 5/12-3.2(a)(1), (2) (West 2018).

¶ 98    When a defendant challenges the sufficiency of the evidence, the question for this court is whether, viewing the evidence in a light favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  *People v. Collins*, 214 Ill. 2d 206, 217 (2005).  We defer to the trier of fact on matters of witness credibility and the weight to be afforded to the evidence.  *People v. Ross*, 229 Ill. 2d 255, 272 (2008).  It is not our role to retry the defendant or substitute our judgment for that of the trier of fact.  *Id*.  We will not overturn a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  *Collins*, 214 Ill. 2d at 217.

¶ 99    Here, defendant argues that the evidence was insufficient to support her conviction, because Kyle testified at trial that he had no memory of the battery and because the body-camera evidence shows that Kyle was the initial aggressor.  These arguments are unavailing.

¶ 100   First, Kyle's trial testimony that he no longer remembered the battery is not fatal to the State's case.  The jury was permitted to consider as substantive evidence Kyle's interview with Campobasso, as recorded in the State's Exhibit No. 14C and Defendant's Exhibit No. 1.  See 725 ILCS 5/115-10.1 (West 2018) (witness's earlier inconsistent statement may be considered for

substantive purposes when the witness is subject to cross-examination on the statement, the statement describes an event about which the witness had personal knowledge, and the statement was signed by the witness, the witness acknowledged under oath that he made the statement, or the statement was accurately recorded by an electronic device.)  For purposes of section 115-10.1, lack of memory as to an earlier statement is an inconsistent statement.  *People v. Flores*, 128 Ill. 2d 66, 87 (1989).

¶ 101    Moreover, the jury may have reasonably concluded that Kyle recanted on the stand because he did not wish to see defendant prosecuted.  The evidence showed that, in the past, Kyle had been unwilling to "press charges" against defendant.  Williams and LeMons testified that Kyle had been reluctant to provide information about the 2016 stabbing.  In Defendant's Exhibit No. 1, Kyle's father can be heard urging his son to press charges: "Kyle, just do it, for once.  Do the right thing."  Kyle can be seen reacting to his father's plea by putting his hands to his ears and forehead in apparent distress.  Also, Kyle can be heard trying to convince Campobasso that defendant was "doing good" lately.  This evidence supports the State's theory of the case that Kyle was caught in a cycle of abuse, and it potentially explained Kyle's refusal to testify against defendant.

¶ 102    Second, the body-camera evidence does not show Kyle to be the initial aggressor.  In support of her position, defendant quotes a portion of Kyle's statement, as recorded in the State's Exhibit 14C:

> "Campobasso: So, what's going on?
>
> Kyle: The whole night went fine.  Got into an argument.  She was getting pretty physical.  And, yes, I pushed her down a couple of times.  I may have thrown her down. *But that's because she grabbed a hammer.  I was really scared.*  I didn't know what was going to happen.  I got the hammer out of her hand.  Took her down.  Then she found a

pocket knife, she started pulling that out. I grabbed her hands and then ran out the door."

(Emphasis added.)

Defendant posits that this quote "support[s] [Kyle] as the aggressor *** [and also] supports [defendant's] self-defense claim."

¶ 103   We disagree. In this quote, Kyle states that he threw down defendant *because she grabbed a hammer*. This quote does not support Kyle as the initial aggressor. It does not support defendant's self-defense claim. Rather, it shows that defendant came at Kyle with a hammer, and it is Kyle who acted in self-defense. Under any reasonable reading, this quote supports the State's theory of the case.

¶ 104   In any event, the evidence was sufficient to convict. Defendant does not dispute that she has had a lengthy and, at times, romantic relationship with Kyle. She does not dispute that she and Kyle lived in tandem houses owned by Kyle's parents.

¶ 105   Kyle provided Campobasso with a consistent account of the altercation. That is, he and defendant were drinking. They began to argue about an ex-boyfriend. Defendant became physical. Defendant approached Kyle with a hammer. Kyle threw her down and removed the hammer. Defendant scratched Kyle about the chest and neck, drawing blood. Defendant then pulled a pocketknife from her pocket. Kyle was "really scared" and ran, half dressed, to his parents' house. Campobasso testified that Kyle's injuries were consistent with his account of the altercation.

¶ 106   Defendant, in contrast, provided Campobasso with a series of inconsistent accounts of the altercation. Circumstantial evidence supported that defendant was the aggressor. Defendant exited the second house and locked the door behind her. The lining of her pocket was pulled out, corroborating Kyle's statement that she had pulled a pocketknife out of her pocket. Her demeanor,

as recorded in the State's Exhibit No. 14B, could have been seen by the jury as loud, erratic, and aggressive. She had no apparent injuries.

¶ 107   Further, evidence of the 2016 stabbing corroborated Kyle's account of the altercation. The jury was instructed to consider evidence of the 2016 stabbing for intent, motive, propensity to commit acts of domestic violence, and the history and context of the relationship. As we have explained, the 2016 stabbing explained Kyle's reaction to defendant's attack. Also, following the 2016 stabbing, as in the instant altercation, defendant had no apparent injuries. The jury may have reasonably concluded that, as in 2016, defendant unjustifiably battered Kyle.

¶ 108   Given this evidence, a rational trier of fact could have determined that the State proved the essential elements of the domestic battery (bodily harm) and domestic battery (contact of an insulting or provoking nature) beyond a reasonable doubt.

¶ 109                                         III. CONCLUSION

¶ 110   For the reasons stated, we affirm the trial court's judgment.

¶ 111   Affirmed.