NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 210745-U

NO. 4-21-0745

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 1, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Piatt County |
| JUSTIN D. SLADE, | ) | No. 20CF83 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Dana Rhoades, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not abuse its discretion in sentencing defendant to a term of 11 years' imprisonment.

¶ 2    Defendant, Justin D. Slade, pleaded guilty to one count of aggravated driving under the influence of alcohol or other intoxicant (ADUI) (intoxicated driving causing a death). The court sentenced him to a term of 11 years' imprisonment and 2 years' mandatory supervised release.

¶ 3    On appeal, defendant argues the court abused its discretion by imposing a sentence which failed to give appropriate weight to his "extraordinary potential for rehabilitation." We affirm.

¶ 4                    I. BACKGROUND

¶ 5    On Wednesday, December 30, 2020, defendant drove his vehicle across the centerline of Illinois Route 10 near the unincorporated community of Lodge. Defendant's vehicle

collided head on with a vehicle driven by 23-year-old Tristan Brannin. Both vehicles caught fire. The collision threw defendant from his vehicle; he suffered major injuries and was taken to a hospital. Brannin was trapped under his dashboard due to the force of the head-on impact with defendant's vehicle. During a 9-1-1 call he made while trapped in his burning vehicle, Brannin burned alive and died despite the attempts of a passerby to free him. Specimens taken from defendant at the hospital indicated he had a blood alcohol content (BAC) of 0.151—at a BAC of 0.08, a person is presumed to be under the influence of alcohol (625 ILCS 5/11-501.2(b)(3) (West 2020))—and Delta9-Tetrahydrocannabinol level of 6.2 nanograms per milliliter—at a level of 5 nanograms per milliliter, a person is presumed to be under the influence of cannabis (625 ILCS 5/11-501.2(b-5)(1) (West 2020)).

¶ 6        Defendant was charged by information with three counts of ADUI (625 ILCS 5/11-501(d)(1)(F) (West 2020)); count I was based on his having an alcohol concentration of 0.08 or greater (625 ILCS 5/11-501(a)(1) (West 2020)). Defendant entered his guilty plea to count I.

¶ 7        At defendant's November 2021 sentencing hearing, the State offered a recording of the 9-1-1 call made by Brannin after the collision. In it, Brannin told the dispatcher the other vehicle was travelling very fast before it hit him. The call further demonstrated Brannin remained conscious as his vehicle burned. Despite significant burning over 95% of his body, the medical examiner reported Brannin died from multiple blunt force injuries caused by the collision.

¶ 8        Officers found a cooler containing broken beer bottles in the back of defendant's vehicle, and traffic reconstructionists found a glass pipe with cannabis residue in a backpack in the vehicle. According to the information received by the police, defendant suffered "a fractured skull, fractured femur, fractured clavicle, as well as multiple fractures in his foot" in the collision. At

sentencing, defendant represented he was unable to walk, use his right arm, use his right hand to eat or write, and had lost some of his hearing.

¶ 9    The State offered testimony indicating defendant worked as a bartender at an American Legion post the night of the crash. The post was a few blocks from where defendant lived with his father, but at the time of the crash defendant was five miles from his workplace. Neither party offered evidence showing what defendant was doing after he left the legion post.

¶ 10    Defendant's presentence investigation report (PSI) showed defendant had a November 2010 conviction of possession of drug paraphernalia and a November 2018 judgment of conditional discharge for failure to give notice of damage to an unattended vehicle, but no other criminal convictions or adjudications. Defendant, who was 34 at the time of the offense, told the investigator he started drinking alcohol when he was 16 and used alcohol socially on weekends. He said he started using cannabis when he was 14 and was a daily user. On December 30, 2020, he took his first drink of the day at about 3 or 4 p.m.; which would have been approximately seven hours before the fatal crash. He had never received substance abuse treatment.

¶ 11    Defendant offered eight letters describing his close relationships with others in the community and his good relationship with his family.

¶ 12    The court sentenced defendant to 11 years' imprisonment. It deemed deterrence to be a particularly important factor in driving-under-the-influence cases. It reasoned defendant's offense was entirely voluntary, as he could have easily walked home from the American Legion post. It noted defendant was apparently driving fast when he crashed, his alcohol concentration was twice the level for intoxication as a matter of law, and he had used intoxicating quantities of both cannabis and alcohol. It considered Brannin's horrific death and the suffering of the passerby who had been unable to free him. The court further deemed the mitigating effect of defendant's

lack of a major criminal record was reduced by his admission of extensive illegal use of alcohol and cannabis, which went to his "character and nature." Consequently, the primary mitigating factor it noted was defendant's decision to plead guilty. The court also noted defendant had consistently been employed. It recognized "defendant has significant injuries which will no doubt serve to remind him of this night forever."

¶ 13      Defendant moved for reconsideration of his sentence, arguing primarily the court did not give adequate weight to mitigating factors, including his rehabilitative potential. The court denied the motion, and this appeal followed.

¶ 14                                     II. ANALYSIS

¶ 15      Defendant argues we should reduce his sentence because it fails to "acknowledge" what he calls his "extraordinary potential for rehabilitation" and the improbability, given his injuries, he will reoffend. He argues:

> "Since all cases subject to this particular range involve death, the legislature contemplated that some cases involving death should result in relatively short sentences. This group of offenders presumably includes individuals like [him] who have very minimal criminal backgrounds and close connections to both family and community."

He further contends the court (1) should have given some weight to his lack of a prior opportunity to participate in a substance abuse rehabilitation program and (2) did not give appropriate weight to the cost of his incarceration.

¶ 16      The State responds "defendant's argument is simply that the trial court did not give 'enough' weight to mitigation and rehabilitation." It argues we may not reduce his sentence "merely because [we] might have balanced the factors differently."

¶ 17        " 'In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed.' " *People v. Hestand*, 362 Ill. App. 3d 272, 281 (2005) (quoting *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001)). Thus, " 'a defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense.' " *People v. Mendez*, 2013 IL App (4th) 110107, ¶ 38 (quoting *People v. Shaw*, 351 Ill. App. 3d 1087, 1093-94 (2004)). A court may impose a sentence at the upper end of the applicable range even where mitigating factors are present. *People v. Pippen*, 324 Ill. App. 3d 649, 652 (2001).

¶ 18        Under Illinois Supreme Court Rule 615(b)(4) (eff. Jan 1, 1967), a reviewing court has the power to reduce a sentence. "That power, however, should be exercised cautiously and sparingly." (Internal quotation marks omitted.) *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "A trial court's determination regarding the length of a defendant's sentence will not be disturbed unless the trial court abused its discretion or relied on improper factors when imposing a sentence." *People v. Smith*, 318 Ill. App. 3d 64, 74 (2000).

¶ 19        "A reviewing court gives great deference to the trial court's judgment regarding sentencing because the trial judge, having observed the defendant and the proceedings, has a far better opportunity to consider these factors than the reviewing court, which must rely on the 'cold' record." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 213.

¶ 20        Defendant was convicted of ADUI under section 11-501(d)(1)(F) of the driving under the influence (DUI) provision. 625 ILCS 5/11-501(d)(1)(F) (West 2020). Such a violation

is a Class 2 felony with a special sentencing range. Unless "extraordinary circumstances exist and require probation," an offender who has caused the death of one person is to be sentenced to 3 to 14 years' imprisonment (625 ILCS 5/11-501(d)(2)(G)(i) (West 2020)). The trial court's 11-year sentence falls within the relevant sentencing range. The court's exercise of its discretion within the applicable range "will not be presumed to be arbitrary or an abuse where it falls within the permissible range authorized by statute." *People v. Moore*, 41 Ill. App. 3d 3, 4 (1976). "[A] sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 21        Here, the State is correct defendant has not suggested any specific error in the court's application of the law to the facts but is merely asking us to reweigh the factors in aggravation and mitigation. Thus, defendant can prevail only if he can show the sentence was unjustifiable—"greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. Because the court gave reasonable weight to the seriousness of the offense and the factors in mitigation, defendant cannot meet that high burden.

¶ 22        First, the court gave justifiable weight to the seriousness of the offense. Defendant suggests no reason exists to conclude "the seriousness of this case is so much greater than other violations of this statute, thereby warranting such a high sentence." The court's explanation of why it deemed the offense serious was reasonable. It focused first on the complete voluntariness of defendant's choice to drive after drinking. As the court noted, defendant went out for an unexplained drive when he was mere blocks from home. He did not have even the weak excuse of

needing to drive to get home. The court also focused on the horrors of Brannin's death and its effect on his would-be rescuer. One need only listen to the 9-1-1 call as Brannin screams that he cannot get out of his truck, and worse, as the fire obviously spreads, to see the fallacy of defendant's claim this case is no more serious than any other ADUI. A court may properly consider as aggravating the degree of harm in an ADUI exceeding what is inherent in the offense. See, *e.g.*, *People v. Jeffers*, 2022 IL App (2d) 210236, ¶ 26.

¶ 23     Moreover, the court had reason to focus on deterrence, both of defendant and of others. The record suggested defendant drove while intoxicated entirely as a choice. Further, given defendant's community ties, his sentence could serve as a warning to others who might engage in similar behavior.

¶ 24     Defendant contends his rehabilitative potential was "extraordinary," thus entitling him to a lower sentence. The trial court had a reasonable basis to conclude otherwise. It noted defendant had admitted he regularly ignored the law. He started drinking alcohol when he was 16 years old, five years before he legally could. He admitted he used cannabis for years before it became legal at the start of 2020. Further, as the court noted, he had a recent judgment of conditional discharge for failure to give notice of damage to an unattended vehicle, indicating he had a history of less than careful driving. Thus, the record shows the court properly considered defendant's rehabilitative potential.

¶ 25     Defendant contends that his close community and family ties make him "extremely unlikely to reoffend." This is unpersuasive. To be sure, defendant will most likely benefit from these ties upon his release. However, in a case such as this one, it is not clear why, if defendant's ties did not prevent him from committing the original offense they will keep him from reoffending.

¶ 26 Defendant also argues "having access to the treatment he has needed since his teen years makes him even less likely to reoffend and is more in line with constitutional requirements than a lengthy term of years in prison." He suggests that the court improperly treated his untreated substance abuse as aggravating despite the lack of evidence he ever declined treatment. This argument too is unpersuasive. As defendant points out, no evidence exists to show he turned down treatment opportunities. However, any evidence defendant *sought out* treatment is equally lacking. Thus, the evidence suggests no more than defendant's willingness to entertain the possibility of substance abuse treatment at a time when such willingness serves his interests.

¶ 27 Moreover, the record casts doubt on how important treatment was for defendant. Defendant notes the "Drug and Alcohol Evaluation Uniform Report" recommended he receive minimal intervention for a moderate risk user. The report suggested:

> "Completion of a minimum of 10 hours of DUI Risk Education; and a minimum of 12 hours of early intervention provided over a minimum of 4 weeks with no more than 3 hours per day in any 7 consecutive days; subsequent completion of any and all necessary treatment; and, after discharge, active on going [*sic*] participation in all activities specified in the continuing care plan, if so recommended."

Further, the report found defendant displayed only 1 of 11 criteria for substance abuse disorder: "Recurrent alcohol or drug use in situations where it is physically hazardous." Given this, the court had no reason to conclude that substance abuse *disorder* had a major role in causing defendant's offense. Indeed, the report supported the conclusion that defendant was simply reckless. Thus, we cannot say the court gave insufficient weight to the possibility treatment would be a significant aid to defendant in his rehabilitation.

¶ 28 Defendant argues, given his injuries, which he suggests will prevent him from driving again, he is at low risk to reoffend. We may not second-guess the weight the court gave to this circumstance. The court stated, "[D]efendant has significant injuries which will no doubt serve to remind him of this night forever," thus recognizing his permanent injuries. It did so after observing defendant, something we cannot do. The description in the record of defendant's injuries is quite limited. It does not, for example, offer any explanation for defendant's inability to use his right hand; a fractured clavicle does not seem to explain the inability. We thus have no basis to accept defendant's contention his injuries will prevent him from reoffending or to otherwise conclude the court unreasonably failed to consider those injuries.

¶ 29 Defendant takes issue with assertions by the State which he takes to suggest that he has *poor* rehabilitative potential. However, what matters is the record does not contain evidence suggesting defendant's rehabilitative potential was so extraordinary as to necessarily outweigh other factors the court could properly consider.

¶ 30 Defendant argues the court ought to have given more weight to the expense of his incarceration. He points to nothing suggesting the court failed to give reasonable weight to this factor. A sentencing court must consider the financial impact of a defendant's incarceration (730 ILCS 5/5-4-1(a)(3) (West 2020)), but we may presume it did absent evidence to the contrary (*People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 24).

¶ 31 In sum, none of the arguments defendant makes for the reduction of his sentence compel us to conclude defendant's sentence was "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210.

¶ 32 III. CONCLUSION

¶ 33 For the reasons stated, we affirm the trial court's judgment.

¶ 34        Affirmed.